Ohio State Bar Association *v.* Illman.

[Cite as Ohio State Bar Assn. v. Illman (1976), 45 Ohio St. 2d 159.]

(D. D. No. 75-4—Decided February 25,1976.)

*Mr. John R. Welch, Mr. Albert L. Bell, Mr. Jack C. Harris* and *Mr. Harlan S. Hertz,* for relator.

*Messrs. Schwartz, Fisher, Spater, McNamara & Marshall, Mr. Theodore G. Fisher* and *Mr. Leonard J. Schwartz,* for respondent.

*Per Curiam.* From a review of the record there is very little dispute as to evidence adduced before the board. Whether one of the two checks was paid by the Yaneys to respondent for present or past legal services is of no great significance. Respondent admitted preparing the deeds and the wills, and admitted receiving at least one check for such services. By no stretch of the imagination can the activity of the respondent be considered as paralegal or legal-intern services, as there was no semblance of compliance with the Ohio rules as to supervised limited practice of law by legal interns. See Gov. R. II, Section 2.

Respondent's admission that he prepared the instruments for the Yaneys is an admission that he violated this court's order of May 21, 1969.

Respondent's principle contention before the board was that during much of his life he was a "compulsive gambler," but now has disciplined himself through professional counselling and is no longer engaged in such activity. However that may be, "compulsive gambling" is no defense to an actual violation of an order issued by this court to a suspended attorney not to engage in the practice of law.

In his brief and oral argument to this court, respondent claims that the board's hearing panel denied him due process by failing to continue the hearing and appoint counsel to represent him at the hearing.

In *Ohio State Bar Assn.* v. *Weaver* (1975), 41 Ohio St. 2d 97, 100, this court held that "[t]he court's purpose in a proceeding [disciplinary] of this type is not to enforce the criminal code, but rather to investigate the conduct and fitness of one of its officers. These proceedings are neither civil nor criminal; they are instituted to safeguard the

courts and to protect the public from the misconduct of those who are licensed to practice law."

The primary function of disciplinary proceedings is investigatory, not accusatory or prosecutorial, and those proceedings are neither civil nor criminal in nature. The standards of due process in such proceedings are not those in a criminal proceeding, nor does it seem to us a necessity of due process that a respondent, who has practiced as an attorney, be entitled as a matter of right to have counsel appointed for him. Furthermore, the record shows that respondent conducted his defense with adroit cross-examination and argued before the panel with logic and self-control.

Upon a review of the entire record, we find that the board's hearing panel did not abuse its authority in refusing to appoint counsel to represent respondent.

A summary of respondent's conduct since admission to the Bar of Ohio reveals two court-ordered suspensions from the practice of law, coupled with a violation of this court's order prohibiting respondent from practicing law.

We conclude, therefore, that respondent's misconduct requires his disbarment, and it is so ordered.

*Judgment accordingly.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, CELEBREZZE and W. BROWN, JJ., concur.

PAUL W. BROWN, J., dissenting. Because the board of commissioners denied a timely request by respondent for the assistance of legal counsel, I cannot join the majority opinion which disbars the respondent from the practice of law. The board's assertion, in its report to this court, that "[r]espondent *elected* to serve as his own attorney," is not supported by the record. (Emphasis added.)

Relator's complaint was filed with the board of commissioners on April 3, 1974. Notice of the filing was sent to respondent on April 10. On May 1, respondent filed an an-

swer to the complaint, and a "motion to stay or consolidate." In that motion, respondent stated that he was undergoing "prolonged, extensive, and expensive psychoanalysis," and that he would be without sufficient funds to engage counsel until after January 1, 1975. Respondent stated further that he would be eligible to petition for reinstatement to the bar in January 1975, and suggested consolidating the disciplinary and reinstatement proceedings.

On May 22, the motion to stay or consolidate was denied. Counsel for relator was instructed to make inquiry concerning respondent's mental condition. On August 5, in response to such inquiry, respondent by letter advised relator and the board, "* * * I am still unemployed and without funds for employment of counsel," and made inquiry as to the possibility of appointed counsel.

An August 12, without any action on respondent's request for counsel, the formal hearing on relator's complaint was scheduled for November 4, 1974.

On October 17, respondent filed a motion to set aside and vacate the hearing date, stating that he was in a state of severe depression, under the care of an analyst in the psychiatric department of the Ohio Medical College, and without funds to retain counsel. Respondent stated further that he had written to former counsel, had received no response, and "has waited until the present time in hopes of such response and that respondent is unwilling to force or impose himself on such counsel in this matter under such circumstances." On October 28, respondent's motion was overruled. Respondent did not receive written notice of that action until the morning of November 4.

On November 4, prior to the introduction of evidence before representatives of the board of commissioners, respondent renewed his request for appointed counsel. Respondent stated, in part:

"I would like to have the panel appoint counsel for me because I do not feel adequately mentally prepared to undertake my defense on this or any other matter and I will accept any counsel that you deem appropriate for the

purpose of this hearing. This is a very important hearing and I think I should be represented by counsel and I don't feel that I could do so myself. This same matter would have a counsel appointed in a criminal case and this involves a professional life, loss of reputation, loss of income and so forth as well as humiliation and especially my mental condition it would be a horrendous burden to proceed without counsel in a case of this nature and so I would like counsel to represent me and I would like the record to show that I strenuously object to proceeding without adequate representation and I want the benefit of counsel at any hearing of this nature."

Respondent's request was again overruled, forcing him to conduct his own defense.

A proceeding to suspend a professional license must comport with the requirements of due process of law. *In re Ruffalo* (1968), 390 U. S. 544; *Spevack* v. *Klein* (1967), 385 U. S. 511. This court has never held that such a proceeding entitles a responding party to the assistance of counsel. In my judgment, however, "disbarment and the loss of professional standing, professional reputation, and of livelihood" (*Spevack, supra,* at page 516) are penalties at least as severe as those imposed in many criminal cases, where the assistance of appointed counsel is made available as a matter of course.

Where the need for the assistance of counsel is manifest, fundamental fairness dictates that one charged as was the respondent be assisted upon timely request. The entitlement should depend, not upon whether the respondent ought to be able to employ counsel, but whether he is in fact unable to employ counsel, by reason of indigency or otherwise. See *State* v. *Tymcio* (1975), 42 Ohio St. 2d 39. I would remand this cause to the board of commissioners, for a determination of respondent's entitlement to appointed counsel, and a rehearing on the merits of relator's complaint.