**DISCIPLINARY COUNSEL *v*. CHARACTER.**

**[Cite as *Disciplinary Counsel v. Character,***

**129 Ohio St.3d 60, 2011-Ohio-2902.]**

*Attorneys — Misconduct — Multiple and repeated violations of the Disciplinary Rules and the Rules of Professional Conduct — Respondent disbarred.*

(No. 2010-1693 — Submitted January 19, 2011 — Decided June 23, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 06-037.

_____

**Per Curiam**.

{¶ 1} Respondent, Dea Lynn Character, currently incarcerated in Marysville, Ohio, Attorney Registration No. 0042158, was admitted to the practice of law in Ohio in 1989.

{¶ 2} In September 1998, we imposed a six-month conditionally stayed suspension on respondent's license based upon her failure to maintain complete records of all funds coming into her possession, failure to promptly pay or deliver funds or property that her client was entitled to receive, withdrawal of unearned or disputed fees from a client trust account, charging a clearly excessive fee, dividing fees with attorneys outside her firm without the prior consent of the client, and neglecting a legal matter entrusted to her. *Cleveland Bar Assn. v. Character-Floyd* (1998), 83 Ohio St.3d 306, 699 N.E.2d 922.

{¶ 3} On October 30, 2009, we suspended respondent's license to practice law on an interim basis as a result of her felony convictions for engaging in a pattern of corrupt activity, theft by deception, and money laundering. *In re Character*, 123 Ohio St.3d 1442, 2009-Ohio-5708, 915 N.E.2d 1228. And on November 3, 2009, we imposed an attorney-registration suspension. *In re*

*Attorney Registration Suspension of Character*, 123 Ohio St.3d 1475, 2009-Ohio-5786, 915 N.E.2d 1256. Those suspensions remain in effect.

{¶ 4} In May 2006, the Cuyahoga County Bar Association filed a two-count complaint charging respondent with professional misconduct. After amending the complaint several times, the bar association transferred the matter to relator, Disciplinary Counsel, who has charged respondent with 20 counts of misconduct in a sixth amended complaint.

{¶ 5} The panel granted relator's motions to dismiss five counts, recommended the dismissal of four more based upon insufficiency of the evidence, and agreed to stay count 20 pending the resolution of respondent's criminal appeal.

{¶ 6} Based upon findings that respondent had committed more than 40 violations of the ethical rules governing the conduct of attorneys in Ohio, the panel recommended that respondent be indefinitely suspended from the practice of law. The board adopted the panel's findings of fact and misconduct but, citing "the astonishing record of misconduct in this case," recommends that we permanently disbar respondent.

{¶ 7} Respondent objects to the board's findings of fact and misconduct, on the ground that they are not supported by the evidence. She further contends that the disciplinary procedures employed in her case deprived her of her due process and that her conduct does not warrant permanent disbarment.

{¶ 8} We adopt the board's findings of fact and misconduct, with the exception of certain alleged violations in counts 4 and 19. We overrule respondent's remaining objections and conclude that her extensive record of serious misconduct involving multiple clients warrants permanent disbarment.

### Misconduct

*Count 1*

**{¶ 9}** In April 2004, respondent accepted a $750 flat fee to represent a woman who had been discharged from her employment with University Hospitals of Cleveland. Although respondent did not perform any work until after she had received the fee, the board found that she did not deposit the fee into a client trust account and that she admitted, through counsel, that she did not always maintain such an account.

**{¶ 10}** While representing this client, respondent held herself out as a member of the firm of Character, Character & Associates. Respondent admitted, however, that her "associates" were attorneys outside her office with whom she co-counseled on a regular basis. Respondent's counsel admitted in his opening statement that respondent did not have malpractice insurance and did not obtain signed acknowledgements of that fact from her clients.

**{¶ 11}** The board found that respondent's conduct violated DR 1-104(A) through (C) (requiring a lawyer to disclose to the client that the lawyer lacks professional-liability insurance and maintain a copy of that disclosure, signed by the client, for five years after termination of the representation), 1-102(A)(6) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), 2-102(B) (prohibiting a lawyer from practicing under a name that is misleading as to the identity of the lawyers practicing under the name, or a firm containing names other than those of one or more of the lawyers in the firm), 2-102(C) (prohibiting a lawyer from holding himself or herself out as having a partnership with one or more lawyers unless they are in fact partners), 9-102(A) (requiring a lawyer to hold property of clients separate from the lawyer's own property), 9-102(A)(2) (requiring funds belonging in part to a client and in part presently or potentially to a lawyer to be deposited in a client trust account and permitting the lawyer to withdraw the undisputed portion belonging to him or her), and 9-102(E) (requiring a lawyer to maintain funds of clients or other third parties in a separate interest-bearing account).

{¶ 12} Because the board found no evidence that respondent had failed to provide files to the client or that she had assumed the responsibility of filing a wrongful-termination suit or representing the client at any hearings, we dismiss alleged violations of DR 1-102(A)(4) and (5) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation and engaging in conduct that is prejudicial to the administration of justice), 6-101(A)(3) (prohibiting neglect of an entrusted legal matter), 7-101(A)(1) through (3) (prohibiting a lawyer from intentionally failing to seek the lawful objectives of his client, failing to carry out a contract of employment for legal services, and prejudicing or damaging a client during the course of the professional relationship), and 9-102(B)(4) (requiring a lawyer to promptly pay or deliver funds and property to which a client is entitled).

{¶ 13} Respondent objects to the board's findings of fact and misconduct, arguing that they are not supported by clear and convincing evidence because the client did not testify, and therefore, there is no evidence to contradict respondent's own version of the events. Accordingly, respondent argues, the entire count must be dismissed.

{¶ 14} Respondent cites *Cincinnati Bar Assn. v. Newman*, 124 Ohio St.3d 505, 2010-Ohio-928, 924 N.E.2d 359, *Dayton Bar Assn. v. Sebree*, 104 Ohio St.3d 448, 2004-Ohio-6560, 820 N.E.2d 318, and *Dayton Bar Assn. v. Wilson*, 127 Ohio St.3d 10, 2010-Ohio-4937, 935 N.E.2d 841, for the proposition that this court must dismiss allegations of misconduct that are not supported by sworn or certified documentary prima facie evidence from the grievants themselves.

{¶ 15} It is true that all findings of misconduct must be supported "by clear and convincing evidence." Gov.Bar R. V(6)(J). In the context of default proceedings, like those at issue in *Newman*, *Sebree*, and *Wilson,* Gov.Bar R. V(6)(F)(1) requires the motion for default to contain "[s]worn or certified documentary prima facie evidence in support of the allegations made." This

requirement ensures that sufficient authenticated, admissible evidence exists to support findings that the alleged misconduct occurred.

{¶ 16} In *Sebree*, we held that the "summary, conclusory, and hearsay-filled affidavits" of the relator's investigator, who lacked firsthand knowledge of the attorney's conduct, did not constitute prima facie evidence sufficient to support findings of attorney misconduct. *Id.,*104 Ohio St.3d 448, 2004-Ohio-6560, 820 N.E.2d 318, ¶ 9, 12, 14. On remand, we instructed relators in default disciplinary proceedings to submit the affidavits of the grievants themselves in support of relators' motions for default judgment. Id. at ¶ 9. We remanded *Newman* for further proceedings upon discovering that the relator had failed to submit a certified copy of the attorney's felony conviction in support of its default motion seeking disbarment. *Newman*, 124 Ohio St.3d 505, 2010-Ohio-928, 924 N.E.2d 359, ¶ 4 and 9. And in *Wilson,* 127 Ohio St.3d 10, 2010-Ohio-4937, 935 N.E.2d 841—another default proceeding—we adopted the board's recommendation to dismiss an alleged violation of Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) because the record contained no evidence proving that an overdraft of the attorney's trust account resulted from her dishonesty, fraud, deceit, or misrepresentation. Id. at ¶ 8.

{¶ 17} This case differs from *Newman*, *Sebree*, and *Wilson* in that respondent appeared and aggressively defended herself against the allegations of misconduct. She entered into a number of factual stipulations with regard to this count and testified about her conduct in this matter, and the parties submitted a total of 129 joint exhibits, several of which relate to this count. Although the client involved in this count did not testify or submit an affidavit describing her interaction with respondent, the record does contain clear and convincing evidence to support the board's findings of fact and conclusions that respondent violated DR1-102(A)(6), 1-104(A) through (C), 2-102(B) and (C), and 9-102(A),

(A)(2), and (E). However, in accordance with the board's recommendation, we dismiss the alleged violations of DR 1-102(A)(4) and (5), 6-101(A)(3), 7-101(A)(1) through (3), and 9-102(B)(4).

*Count 4*

{¶ 18} Count 4 of the amended complaint relates to respondent's representation of a client in a bankruptcy proceeding. The parties stipulated that when respondent electronically filed the bankruptcy petition, the case was erroneously assigned three separate case numbers (the "triple-filed case") and that respondent had represented herself as an attorney with the firm of Character, Character & Associates.

{¶ 19} The board found that in April 2005, the bankruptcy court issued an order for respondent to appear and show cause why the filing fees had not been paid with respect to 11 bankruptcy cases, including one of the cases from the triple-filed case. The show-cause hearing was adjourned to May 10, 2005, to permit respondent to pay the required fees. Respondent testified that she had experienced technical difficulties in getting the electronic filing system and the bankruptcy clerk to accept and process her credit card payments.

{¶ 20} The board also found that respondent had failed to appear at the May 10 hearing and at a July 26 hearing to show cause why she had failed to file certain documents under one of the triple-filed case numbers, resulting in the dismissal of that case. The board found, however, that respondent had testified that she could not understand why the hearing had been scheduled, given that the case had been dismissed in May.

{¶ 21} The board found that respondent's conduct violated DR 1-102(A)(5), and (6) 6-101(A)(2) (prohibiting a lawyer from handling a legal matter without adequate preparation ) and (A)(3), and 7-101(A)(1) through (3).

{¶ 22} Respondent objects and argues that there is not sufficient evidence to support the board's findings of misconduct because the client did not testify,

and there was no evidence to contradict her testimony. Having conducted an independent review of the record, we find that even in the absence of the client's own testimony, the evidence clearly and convincingly demonstrates that respondent handled this client's case without adequate preparation and neglected it, and that her actions adversely reflected upon her fitness to practice law and were prejudicial to the administration of justice.

{¶ 23} Finding no evidence that respondent held herself out as a partner in a nonexistent law firm in her representation of this client, the board recommends that we dismiss alleged violations of DR 2-102(B) and (C). We observe, however, that respondent has stipulated that she had held herself out as an attorney with the firm of Character, Character & Associates with regard to this count. She testified that she considered her outside co-counsel to be her associates. Therefore, we find that relator has proved by clear and convincing evidence that respondent violated DR 2-102(B) and (C) with respect to this count.

{¶ 24} The record, however, does not contain sufficient evidence to support the board's findings that respondent violated DR 7-101(A)(1) through (3), which prohibit an attorney from intentionally failing to seek the lawful objectives of her client, intentionally failing to carry out the contract of employment for legal services, and intentionally prejudicing or damaging the client during the course of the professional relationship.

{¶ 25} The parties have stipulated that the client's bankruptcy was erroneously assigned three separate case numbers. Although one of those cases was dismissed for respondent's failure to submit the requisite documents and respondent was sanctioned for her failure to timely pay the fees in the two remaining cases, the parties jointly submitted a receipt from the United States Bankruptcy Court of the Northern District of Ohio, Cleveland Division, demonstrating that respondent paid the $194 filing fee in the oldest of the client's three bankruptcy proceedings on May 9, 2005. Respondent testified that the

client did not complete the Chapter 13 proceeding under one of the remaining case numbers because he could not afford to maintain the scheduled payments. Relator offered no evidence to contradict this testimony. Thus, there is no evidence that respondent intentionally (1) failed to seek the lawful objectives of this client, (2) failed to carry out the contract of employment for legal services, or (3) prejudiced or damaged the client. Accordingly, we dismiss the alleged violations of DR 7-101(A)(1) through (3).

*Count 10*

{¶ 26} Respondent's misconduct in this count arises from her representation of a mentally challenged woman in a postdecree domestic-relations matter and certain real estate matters, beginning with the client's eviction from her home in April 2002. The panel and board found that the client was not a sophisticated individual and that respondent had attained a position of trust by taking her to dinner, socializing with her, and helping her find housing. Despite the client's mental and emotional challenges, the board found that she evidenced normal memory recall and comprehension during her testimony.

{¶ 27} The client testified that she did not sign a fee agreement and that she did not know how much respondent would charge her for the work, but that respondent had told her it would be "a lot of money * * * like $29,000." During the course of the representation, the client received $35,000 from her former husband, representing her share of the proceeds from the sale of the marital residence, and an additional $21,500, representing her share of his 401(k) plan. She also began to receive $345 per month from her former husband's pension.

{¶ 28} Respondent and her co-counsel received $15,000 in attorney fees from the $35,000 in real estate proceeds. Respondent received an additional $3,000 when the client received her share of her former husband's 401(k) and $3,750 when the client closed on the purchase of a new home. Respondent also admitted that she and her co-counsel had received an additional $2,000 payment

from certain funds that the client had invested with Skywater Investment Group and Network ("Skywater"). Thus, respondent has acknowledged that she and her co-counsel received $23,750 for handling the client's postdecree and real estate matters.

{¶ 29} The board acknowledged that respondent assisted with the client's real estate closing and attended one hearing related to the former husband's 401(k) plan, but found that "there does not appear to have been anything approaching $23,500 of legal work performed by Respondent on behalf of [the client]." They observed that the client had walked the motion through the court to obtain the funds from her former husband's 401(k) plan and had pursued the monthly pension benefits on her own.

{¶ 30} In addition to the attorney fees respondent received from the client, respondent also induced the client to invest $4,800 in Skywater, which was a division of Time Reveals, L.L.C. Respondent served as the senior vice president of legal and business affairs for Time Reveals and testified that she "was the person in charge of the money for investments." Respondent did not disclose that her boyfriend (with whom she cohabitated from 2000 to 2007) and his brother owned the companies.

{¶ 31} The client testified that she received no profit from her Skywater investment and that the principal was never returned to her. Respondent claimed that she distributed the funds to several of the client's creditors at the client's direction. The only documentation she provided was a receipt for $600 purportedly paid to the client, but the client testified that the signature on that receipt was not hers.

{¶ 32} Moreover, the panel and board found that respondent had failed to cooperate in the Cuyahoga County Bar Association's investigation of this matter, observing that she had failed to attend scheduled interviews and was late for

appointments and for her deposition. She also failed to make a timely, orderly, and organized production of her files and other documents.

{¶ 33} The board found by clear and convincing evidence that respondent's conduct violated DR 1-102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude) and (A)(4), 1-102(A)(6), 1-104, 2-106(A) and (B) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), 5-104 (prohibiting a lawyer from entering into a business transaction with a client if they have differing interests unless the client has consented after full disclosure), and 5-105 (requiring a lawyer to refuse to accept or continue employment if the interests of another client may impair the independent professional judgment of the lawyer) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation). But citing a lack of sufficient evidence, the board recommends that we dismiss alleged violations of DR 2-107(A) (permitting division of fees by lawyers who are not in the same firm only with prior consent of client and if certain conditions are met) and 9-102(A)(2).

{¶ 34} Respondent objects to the board's findings of fact and misconduct, reciting her version of the events without any citations to the record, and claiming that she performed substantial work for the client and worked without pay during the greater part of the representation. Respondent, however, offered no documentary evidence to demonstrate how much time she spent working on the client's case, and the client testified that she pursued some of the postdecree matters on her own. The panel, whose findings were adopted by the board, found the client's testimony more credible than that of respondent. We defer to the panel's determination because the record does not weigh heavily against it. *Disciplinary Counsel v. Heiland*, 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, ¶ 39, citing *Cincinnati Bar Assn. v. Statzer*, 101 Ohio St.3d 14, 2003-Ohio-6649, 800 N.E.2d 1117, ¶ 8. Accordingly, we overrule respondent's objections

and adopt the board's findings of fact and misconduct in count 10, as well as the board's recommendation to dismiss alleged violations of DR 2-107(A) and 9-102(A)(2).

*Count 12*

**{¶ 35}** In 2004, a college student retained respondent to defend him against criminal charges that he had stabbed two students during an altercation at a fraternity house and to represent him in a related suspension proceeding at the university he attended. The client never executed a fee agreement, but his father paid respondent a $23,000 retainer to cover her representation and investigator and expert-witness fees. Respondent has stipulated that she represented herself as an attorney with the firm Character, Character & Associates during this representation.

**{¶ 36}** Although respondent was the attorney retained to handle the case, the board found that she did "virtually nothing" in the criminal matter. Respondent brought in two other attorneys to assist in the criminal matter without the client's consent, one of whom served as lead counsel, handling court appearances and filing discovery requests and motions with the court. When he failed to attend a hearing, the client's bond was revoked, although it was later reinstated. The client and his father also testified that despite their repeated requests, they never spoke with any investigator or outside consultants or received the names of any such persons from respondent.

**{¶ 37}** Respondent advised the client to plead guilty to two misdemeanor counts of assault, stating that he would probably not serve any jail time and would be reinstated as a student at the university. Relying on this erroneous information, the client entered a guilty plea, but he was sentenced to six months in jail and was not permitted to return to the university. He obtained his early release by filing a pro se motion.

{¶ 38} Respondent appeared with the client at just one hearing regarding his university suspension. Although she was permitted to actively participate in the hearing, she only took notes. Following that hearing, the client was suspended. The client terminated the respondent's representation two days before his second university hearing because she had provided virtually no assistance in preparing him for the hearing and had failed to obtain the appearance of witnesses that he needed to conduct his defense. He requested an accounting of his fees and expenses, but respondent never provided one.

{¶ 39} Based upon these facts, the board found that respondent's conduct violated DR 1-102(A)(5), 2-102(B) and (C), 2-106(A) and (B), 6-101(A)(2) and (3), 7-101(A)(1) through (3), and 9-102(A). The board also recommends that we dismiss an alleged violation of Gov.Bar R. V(4)(G) for lack of sufficient evidence.

{¶ 40} Respondent objects to the board's findings of fact and misconduct, arguing that she thoroughly and diligently represented the client and that her fee was reasonable for the time she spent and the expenses she incurred on the client's behalf. Having independently reviewed the record, we overrule respondent's objection and adopt the board's findings of fact and misconduct, and we dismiss the alleged violation of Gov.Bar R. V(4)(G).

*Count 13*

{¶ 41} Mary Ann Rini was assigned to investigate three grievances that were part of the Cuyahoga County Bar Association's initial case against respondent. She testified that respondent was not cooperative and was very difficult to contact by letter and phone. Rini estimated that respondent failed to attend five or six scheduled appointments and stated that on the occasions when respondent did attend, she was constantly on the telephone or left early. She recalled one occasion when, in response to a subpoena for records, respondent arrived four hours late with a box of disorganized records. Although Rini

attempted to question her about the records, she gave up because the documents were in such disarray. The board determined that while respondent had offered several explanations as to the whereabouts of her records, the majority of the requested records were not promptly produced, if they were produced at all. The record also contains the transcripts of three attempted depositions, each reflecting that respondent was aware of, but failed to attend, a scheduled deposition.

{¶ 42} Respondent objects to the board's findings of fact and misconduct and argues that over the course of the five-year investigation of these grievances, she submitted to a number of depositions, produced numerous documents, and faced a number of unexpected personal challenges that prevented her from fully participating in all aspects of the investigation. While we acknowledge that respondent did cooperate in certain aspects of this disciplinary proceeding, the record clearly and convincingly demonstrates that she failed to cooperate on a number of occasions, causing unnecessary delay and expense. Accordingly, we overrule respondent's objections, adopt the board's findings of fact, and conclude that respondent violated Gov.Bar R. V(4)(G) as found by the board.

*Count 15*

{¶ 43} A woman hired respondent to resolve a judgment lien of $2,000 to $3,000 that a creditor had obtained against a certain parcel of her real property. As part of the representation, respondent was supposed to pay the judgment on the client's behalf from the proceeds of a certain investment with a division of Time Reveals. Respondent issued a check to the client's creditor, but after it was returned for insufficient funds, the client paid the judgment herself. Respondent attempted to reimburse the client with a check that she had drafted on an account belonging to Time Reveals. The client witnessed respondent sign the name of one of the company's owners to the check and testified that the bank refused to cash it due to insufficient funds.

**{¶ 44}** Based upon these facts, the board found that respondent had violated DR 1-102(A)(4) and (6) and 7-101(A)(3).

**{¶ 45}** Respondent objects to the board's findings, claiming that someone else drafted and delivered the check to the client without her knowledge and that respondent later reimbursed the client in cash. The client's testimony directly contradicted respondent's version of the events, and the board found the client's testimony more credible. Therefore, we adopt the board findings of fact and misconduct. And on the board's recommendation, we dismiss the alleged violation of DR 1-102(A)(3) based upon the insufficiency of the evidence.

*Count 16*

**{¶ 46}** In March 2006, at respondent's request, the client discussed in count 15 invested $35,000 in certain property-rehabilitation projects being conducted by SIGN Joint Ventures, a division of Time Reveals, with a stated return of $10,000 for a seven-day investment.

**{¶ 47}** On April 7, 2006, after the client had received the return of her $35,000 investment plus $12,000 in interest, she agreed to invest an additional $25,000 for ten days, with a stated return of $8,000. The client wired the money from her bank account into a Huntington Bank account in the name of Time Reveals. The term of the investment was supposed to be only ten days, but on November 12, 2009, the client testified that she had received less than $5,000 of the $33,000 she was owed.

**{¶ 48}** Respondent admitted that she had "some oversight" of the use of the money, although she did not have an ownership interest in the company. She did not provide the client with a prospectus or information about the properties in which she would be investing. Nor did she provide the client with any appraisal information. Respondent blamed the client's investment loss on the real estate market crash.

**{¶ 49}** The board found that respondent's conduct violated DR 1-102(A)(4) and (6), 5-104(A), and 7-101(A)(3) and recommends that we dismiss an alleged violation of DR 1-102(A)(3) based upon the insufficiency of the evidence. Having reviewed the record and considered the respondent's objection, in which she blames the recent real estate crash and economic downturn for the client's losses, we adopt these findings of fact and misconduct and dismiss the alleged violation of DR 1-102(A)(3).

*Count 17*

**{¶ 50}** The testimony and stipulated facts of this case demonstrate that in December 2007, a mother hired respondent to represent her son in his appeal of a criminal conviction. Although the mother paid respondent $5,850 between December 2007 and March 17, 2008, respondent did not appeal the client's criminal conviction and left the matter to his court-appointed attorney.

**{¶ 51}** Respondent did not enter an appearance in the client's other pending criminal matters prior to trial, and he was continually represented by court-appointed counsel. But when respondent advised the client's mother that she would need to hire an investigator for the pending charges, his mother paid her an additional $600 for that purpose. When the client's mother expressed concern that respondent would be out of town during the son's criminal trial, respondent advised her that she would talk with his court-appointed counsel. The court-appointed attorney testified that he never spoke with the investigator purportedly hired by respondent and that he never discussed any particulars of the pending matter with respondent. Respondent was in Florida during the client's February 2008 trial, and he was represented by his court-appointed counsel.

**{¶ 52}** Respondent asked the client's mother to pay another $500 toward her son's attorney fees, but she refused to pay until respondent showed her that the postconviction motions had been filed on the client's behalf. Respondent prepared a motion for a new trial, a motion for judgment of acquittal

notwithstanding the verdict, and a motion for reconsideration and/or modification of sentence and presented them to the mother with a notice of limited appearance to represent the son with respect to two of the three motions. But the motions stated that they were prepared pro se and therefore did not identify respondent as the son's counsel. Respondent and the client's mother both testified that the signatures on the motions were not the client's. Nonetheless, after receiving the motions, the mother paid respondent an additional $500. While each of the motions bears a certificate of service dated March 13, 2008, a printout of the court's docket reflects that only the motion for a judgment of acquittal notwithstanding the verdict was filed with the court as of June 20, 2008.

{¶ 53} The client's mother testified that when she left respondent messages, her calls were not returned and that many times she could not even leave a message because respondent's voicemail box was full.

{¶ 54} Respondent has stipulated that although she is a sole practitioner, she represented herself as an attorney with the firm Character & Character. She also admitted that she did not have malpractice insurance while she represented this client and did not have him or his mother sign an acknowledgment of that fact.

{¶ 55} The board found that respondent's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional-liability insurance), 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee), 7.5(a) (prohibiting a lawyer from practicing under a firm name containing names other than those of the lawyers in the firm), 7.5(d) (permitting lawyers to state or imply that they practice in a partnership or other organization only when that is the fact), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(h) (prohibiting a lawyer from

engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 56} Respondent objects to these findings of fact and misconduct, arguing that in the absence of the client's testimony, there is insufficient evidence to prove her misconduct. She contends that she was retained by the client, not his mother, that she took her orders directly from the client, and that he received appropriate representation at a reasonable cost.

{¶ 57} The testimony of the client's mother, based upon her personal knowledge of the events, refutes many of respondent's claims. Moreover, the evidence clearly and convincingly demonstrates that despite having received almost $7,000 to represent the client, respondent did not seek to obtain the admitted object of her representation — the pursuit of her client's criminal appeal. Nor did she enter an appearance in his other criminal matters until after the client had been convicted — even though the client's mother had paid her to do so. And then her appearance was limited to the pursuit of postconviction motions, prepared by her, that state they were prepared and filed pro se. For these reasons, we overrule respondent's objections and find that the record clearly and convincingly establishes the violations found by the board. Therefore, we adopt the board's findings of fact and misconduct.

*Count 18*

{¶ 58} A woman paid respondent a $700 retainer to represent family members who were facing residential foreclosure – one in Cleveland and the other in Georgia. The property owners hoped to achieve short sales and had buyers for both properties. Respondent stipulated that she did not notify the woman that she did not carry malpractice insurance.

{¶ 59} Although respondent filed an answer on behalf of the Cleveland property owner in the foreclosure proceeding, she did not oppose the mortgage company's motion for summary judgment, and it was eventually granted. The

property owner filed a pro se motion for relief from judgment, stating that her "counsel just disappeared," and she eventually resolved the matter herself.

{¶ 60} Respondent falsely represented that she was licensed to practice law in Georgia. Although respondent facilitated the filing of the Georgia property owner's Chapter 13 bankruptcy petition, he eventually lost the property to foreclosure.

{¶ 61} The panel and board found that respondent's conduct violated Prof.Cond.R. 1.4(c), 8.4(c), and 8.4(h) and recommends that we dismiss alleged violations of Prof. Cond.R. 1.3 and 1.5(a) based upon the insufficiency of the evidence. Respondent objects and argues that this count should be dismissed because the clients themselves did not testify or otherwise provide their testimony, and therefore, the board's findings cannot be supported by clear and convincing evidence.

{¶ 62} We have rejected this argument in counts 1 and 4, above, and we reject it here. Because the record contains competent, credible evidence that clearly and convincingly supports the board's findings of fact and misconduct with respect to this count, we adopt those findings.

*Count 19*

{¶ 63} In 2007, respondent attended a conference about setting up private investment funds on behalf of Time Reveals and Skywater. While there, she and another acquaintance met a man who was interested in investing in real estate. The three began exchanging e-mails and telephone calls to explore investment opportunities. Respondent provided the investor with information on the lease-back of a single-family home in Gates Mills, Ohio that could be fixed up and sold at a higher price.

{¶ 64} The investor signed a contract to purchase the property for $3.5 million as the buyer and as the "nominee for Skywater Investment Group & Network (buyer)." He was supposed to obtain a mortgage to cover the purchase

price. Respondent stipulated that she instructed the investor to electronically wire $40,000 to a bank account at Key National Bank. The evidence reveals that the investor wired a total of $50,000 to an account at that bank titled in the name of respondent's parents. After the investor was unable to secure financing for the Gates Mills property, he contacted respondent to obtain a refund, but respondent did not return the money. She testified that the money the investor wired to Key National Bank was a nonrefundable and transferable deposit for the assignment of the purchase agreement.

{¶ 65} Respondent testified that the money was wired to her mother's account because Skywater owed her mother money and because respondent could not get to her own bank in time to transfer some of the money to another account. She claimed that some of the checks her mother wrote against the funds were to pay Time Reveals expenses, but she offered no documentary evidence to support this contention. Finding that the canceled checks demonstrated that the funds were not used for company purposes, the panel and board rejected respondent's testimony to the contrary.

{¶ 66} The board found that respondent's conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c), and 8.4(h), but recommends that we dismiss the alleged violation of 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice) based upon the insufficiency of the evidence.

{¶ 67} Respondent objects to these findings of misconduct, arguing that we lack jurisdiction to discipline her in this matter because her conduct "involved another company that is not one represented by or affiliated with Respondent" and does not involve her "position or conduct or duties as a lawyer." These arguments lack merit, however, because the charged misconduct relates solely to respondent's own actions with respect to these transactions. Moreover, the fact

that respondent's course of conduct did not arise from actions undertaken solely in her capacity as an attorney does not insulate her conduct from our scrutiny. We have long recognized that attorneys are expected to "maintain a degree of personal and professional integrity that meets the highest standard." *Cleveland Bar Assn. v. Stein* (1972), 29 Ohio St.2d 77, 81, 58 O.O.2d 151, 278 N.E.2d 670. Paragraph three of the preamble to the Ohio Rules of Professional Conduct contemplates that attorneys may be disciplined for personal conduct: "In addition, there are rules that apply to * * * practicing lawyers even when they are acting in a nonprofessional capacity. For example, a lawyer who commits fraud in the conduct of a business is subject to discipline for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. See Rule 8.4."

{¶ 68} For example, we consistently discipline attorneys for personal conduct that violates criminal statutes. See, e.g., *Disciplinary Counsel v. O'Malley,* 126 Ohio St.3d 443, 2010-Ohio-3802, 935 N.E.2d 5, ¶ 15 (imposing a two-year suspension for an attorney convicted of transporting obscene materials in interstate or foreign commerce by downloading this material to his home computer). See also *Disciplinary Counsel v. Landis*, 124 Ohio St.3d 508, 2010-Ohio-927, 924 N.E.2d 361, ¶ 2 (imposing a one-year suspension for an attorney convicted of operating a motor vehicle while intoxicated). And we have also disciplined attorneys for engaging in conduct involving fraud, deceit, or misrepresentation even when it is not evident that criminal charges have resulted. See, e.g., *Lake Cty. Bar Assn. v. Baxter* (1983), 4 Ohio St.3d 82, 83, 4 OBR 263, 446 N.E.2d 1121 (indefinitely suspending an attorney who engaged in a pattern of check kiting, with no mention of corresponding criminal charges).

{¶ 69} On the record before us, we cannot determine whether the disputed $40,000 of the investor's payment was intended as earnest money for the purchase of the Gates Mills property or whether it represented a nonrefundable payment for the assignment of Skywater's rights to purchase other properties.

Therefore, we cannot conclude that the retention of these funds was unlawful. Respondent's conduct in diverting the payment intended for Skywater and directing it to her parents' checking account, however, constitutes conduct involving dishonesty, fraud, deceit, or misrepresentation and adversely reflects upon her fitness to practice law.

{¶ 70} Therefore, we adopt the board's findings that respondent has violated Prof. Cond.R. 8.4(c) and 8.4(h) and dismiss the alleged violations of Prof.Cond.R. 8.4(b) and 8.4(d).

## Due Process

{¶ 71} In addition to challenging the sufficiency of the evidence against her, respondent also contends that the procedures utilized in this disciplinary proceeding have violated her due process rights in three respects.

{¶ 72} First, respondent complains that her criminal prosecution and conviction, as well as her subsequent appeal and petition for postconviction relief, somehow prejudiced her in this disciplinary proceeding and "potentially compromise[d] her position with her criminal case by having and needing to respond to the related Grievances herein."

{¶ 73} Respondent cites no legal authority to support these arguments and makes no effort to demonstrate that she has suffered actual prejudice as the result of her concurrent participation in this disciplinary proceeding and her criminal prosecution.

{¶ 74} Moreover, relator and respondent's counsel agreed to bifurcate count 20 of the sixth amended complaint, which dealt with the conduct underlying respondent's criminal convictions, in light of her pending appeal and postconviction proceedings. Respondent did not object to the bifurcation, and at the oral argument before this court, her counsel plainly stated that she did not wish to stay this proceeding pending the outcome of her criminal appeal.

**{¶ 75}** Next, respondent argues that her incarceration at the Ohio Reformatory for Women and corresponding inability to attend her disciplinary hearing and observe the testimony against her prejudiced her defense against relator's complaint. Once again, she fails to cite any legal authority in support of her argument and fails to demonstrate that she suffered any actual prejudice.

**{¶ 76}** We have declared that attorney-discipline proceedings "are neither civil nor criminal; they are instituted to safeguard the courts and to protect the public from the misconduct of those who are licensed to practice law." *Ohio State Bar Assn v. Weaver* (1975), 41 Ohio St.2d 97, 100, 70 O.O.2d 175, 322 N.E.2d 665. Consequently, we have recognized that the "standards of due process in a disciplinary proceeding are not equal to those in a criminal matter." *In re Judicial Campaign Complaint Against Carr* (1996), 76 Ohio St.3d 320, 322, 667 N.E.2d 956, citing *Ohio State Bar Assn. v. Illman* (1976), 45 Ohio St.2d 159, 162, 74 O.O.2d 284, 342 N.E.2d 688. We have held that due process requirements in attorney-discipline proceedings have been satisfied when the respondent is afforded a hearing, the right to issue subpoenas and depose witnesses, and an opportunity for preparation to explain the circumstances surrounding his actions. *Cleveland Bar Assn v. Acker* (1972), 29 Ohio St.2d 18, 20, 58 O.O.2d 71, 278 N.E.2d 32.

**{¶ 77}** And in *In re Colburn* (1987), 30 Ohio St.3d 141, 30 OBR 452, 507 N.E.2d 1138, we denied an incarcerated attorney's petition for a writ of habeas corpus ad testificandum to appear at his disciplinary hearing. There, we observed that provisions of Civ.R. 30(A) (deposition upon oral examination) and 32(A)(3) (use of depositions in court proceedings) and Gov.Bar R. V (disciplinary procedure) provided a mechanism for the taking of depositions of incarcerated parties and that the submission of a such deposition testimony may constitute a sufficient opportunity for a respondent to present his or her testimony. *Colburn* at 142-143. Therefore, we held that the primary means of securing the testimony of

a prisoner in a disciplinary action should be by deposition. Id. at 143. The panel followed this procedure in respondent's case. It viewed the video recording of respondent's deposition testimony and actually went to the Ohio Reformatory for Women on November 13, 2009, to question respondent. Furthermore, respondent failed to object to these procedural issues at the time of her deposition and hearing.

{¶ 78} Third, respondent argues that the participation of just two of the three panel members appointed to hear this matter has prejudiced her case. Because Gov.Bar R. V(6)(D)(3) (probable-cause panel; appointment of hearing panel) provides that a "majority of the panel shall constitute a quorum" and two of the three appointed panel members presided over respondent's hearing, this objection has no merit. See also Section 5 (quorum of panel or board) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 79} Based upon the foregoing, we conclude that respondent was afforded all the process required by the Rules for the Government of the Bar of Ohio and our precedent. Therefore, we overrule this objection.

## Sanction

{¶ 80} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 81} As aggravating factors, the board found that respondent has committed prior disciplinary offenses, has engaged in a pattern of misconduct involving multiple offenses, has refused to acknowledge the wrongful nature of

her conduct, has caused harm to vulnerable victims, and has failed to make restitution. See BCGD Proc.Reg. 10(B)(1)(a), (c), (d), (g), (h), and (i). Rejecting the parties' stipulation that other penalties or sanctions have been imposed, see BCGD Proc.Reg. 10(B)(2)(f), the board found that none of the mitigating factors set forth in BCGD Proc.Reg. 10(B)(2) apply. Respondent objects to these findings, but she does not cite any authority or present any argument in support of her objection. Because the board's findings in this regard are amply supported by the record, we adopt them.

{¶ 82} In his posthearing brief, relator argues that permanent disbarment is the only appropriate sanction for respondent's misconduct. Respondent argues that her license should be suspended for an unspecified period of time and that she should serve a period of monitored probation upon her reentering the practice of law.

{¶ 83} The panel recommended that respondent be indefinitely suspended from the practice of law in Ohio. The board, however, recommends that respondent be permanently disbarred. Respondent objects to the recommended sanction, arguing that due to the alleged procedural and evidentiary infirmities in relator's case, disbarment is not warranted. We disagree.

{¶ 84} Respondent engaged in a pattern of misconduct over a period of years and involving multiple clients. She engaged in multiple acts of dishonesty, charged excessive fees, handled clients' legal matters without adequate preparation, neglected multiple client matters, intentionally damaged her clients, and entered into business relationships with her clients without making the requisite disclosures. She also failed to hold client money separate from her own, failed to disclose that she did not carry malpractice insurance, and falsely represented that she was part of a law firm, when in fact, she was a sole practitioner. In so doing, she engaged in multiple acts that adversely reflect on

her fitness to practice law. All told, she committed more than 40 violations of the Code of Professional Responsibility and Rules of Professional Conduct.

{¶ 85} We have previously imposed the sanction of permanent disbarment for misconduct similar to that found here. See, e.g., *Toledo Bar Assn. v. Mason*, 118 Ohio St.3d 412, 2008-Ohio-2704, 889 N.E.2d 539, ¶ 32 ("continuous course of conduct involving deceit, misappropriation of clients' funds, neglect of clients' cases, failure to account for fees, failure to make restitution, and failure to cooperate in the investigation of this misconduct" demonstrates that the attorney is not fit to practice law); *Cincinnati Bar Assn. v. Weaver*, 102 Ohio St.3d 264, 2004-Ohio-2683, 809 N.E.2d 1113, ¶ 15 (an attorney's "persistent neglect of his clients' interests, failure to perform as promised, failures to account for his clients' money, and lack of any participation in the disciplinary proceedings" compel his disbarment); *Columbus Bar Assn. v. Gueli*, 119 Ohio St.3d 434, 2008-Ohio-4786, 894 N.E.2d 1231(permanent disbarment is the only result for repeated misconduct involving dishonesty, fraud, deceit, or misrepresentation, misappropriation of fees, intentionally damaging clients during his professional employment, failing to maintain records of all funds received on behalf of clients, handling legal matters without adequate preparation, neglect of client matters, and accepting legal employment when the lawyer's professional judgment may be affected by the lawyer's personal or financial interests without obtaining the client's informed consent).

{¶ 86} Therefore, we adopt the board's recommended sanction of permanent disbarment. Accordingly, Dea Lynn Character is permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Heather L. Hissom, Assistant Disciplinary Counsel, for relator.

Gerald Walton, for respondent.

_____