DISCIPLINARY COUNSEL *v.* SABROFF.

[Cite as *Disciplinary Counsel v. Sabroff,* **123 Ohio St.3d 182, 2009-Ohio-4205.**]

*Attorneys — Misconduct — Multiple violations of the Disciplinary Rules and the Rules of Professional Conduct — Felony conviction — Failure to cooperate in the disciplinary process — Disbarment is the presumptive sanction for misappropriating client funds and practicing law while under suspension.*

(No. 2009-0467 — Submitted April 21, 2009 — Decided August 27, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-074.

_____

**Per Curiam**.

{¶ 1} Respondent, Brett M. Sabroff, Attorney Registration No. 0018933, with a registration address in Mayfield Heights, Ohio, was admitted to the practice of law in Ohio in 1977. The Board of Commissioners on Grievances and Discipline has recommended that this court permanently disbar respondent, based on findings that he misappropriated clients' funds, settled a client's claim without her consent, failed to maintain all client funds in an attorney trust account, commingled client and personal funds in his trust account, practiced law while under suspension, and failed to cooperate in the efforts to investigate his misconduct. We agree that respondent committed professional misconduct as found by the board and that permanent disbarment is the appropriate sanction for his misconduct.

{¶ 2} Relator, Disciplinary Counsel, charged respondent with violations of the Disciplinary Rules of the Code of Professional Responsibility, the Rules of Professional Conduct, the Gov.Bar R. V(4)(G) requirement that attorneys

cooperate in investigations of misconduct, and the duties of a suspended attorney specified in Gov.Bar R. V(8)(E). When service could not be perfected at the address on file for respondent with the Office of Attorney Services or at a last known address, the board served the complaint on the Clerk of the Supreme Court pursuant to Gov.Bar R. V(11)(B) (providing that the Clerk is the agent for service of process when the whereabouts of Ohio lawyers are unknown). Respondent failed to answer the complaint, and pursuant to Gov.Bar R. V(6)(F), relator moved for default. A master commissioner appointed by the board granted the motion, making findings of fact, conclusions of law, and the recommendation that respondent be permanently disbarred. The board adopted the master commissioner's findings of misconduct, conclusions of law, and recommendation.

**Misconduct**

*Count I – The Sebolds' Grievance*

{¶ 3} In July 2001, Mikki and Mark Sebold engaged respondent to represent them in their personal-injury claims arising from an automobile accident. On respondent's recommendation, the Sebolds received treatment for their injuries from Dr. Albert Musca. Respondent settled their claims and presented the Sebolds with a settlement statement reflecting that he had withheld part of their share to pay Dr. Musca for their medical treatment. However, respondent did not pay the Sebolds' medical bills, nor did he retain these funds for their benefit in his attorney trust account. In January 2007, the Sebolds received collection notices for their unpaid medical bills, and respondent informed them that he had signed an agreement with Dr. Musca to be responsible for the medical bills. Respondent could not produce a copy of this agreement, did not pay Dr. Musca, and did not reimburse the Sebolds.

{¶ 4} We accept the board's findings that respondent misappropriated the Sebolds' funds and violated DR 1-102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (prohibiting conduct

2

prejudicial to the administration of justice), 1-102(A)(6) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice law), 9-102(B)(3) (requiring a lawyer to maintain complete records and appropriate accounts), and 9-102(B)(4) (requiring a lawyer to promptly pay or deliver funds in the lawyer's possession to which the client is entitled).

*Count II – Failure to Cooperate*

{¶ 5}   In September 2007, relator sent a letter of inquiry to the respondent regarding the Sebolds' allegations.  Although respondent signed the certified mail return receipt, he did not respond to relator's inquiry.  In November 2007, relator sent a second letter of inquiry to respondent.  Respondent provided a response to the second letter of inquiry, but he failed to address fully the specific allegations in the Sebolds' grievance.  In April 2008, relator subpoenaed respondent to appear for a deposition at relator's office in Columbus, Ohio.  At respondent's request, relator rescheduled the deposition for 9:00 a.m. on June 19, 2008, in Cleveland, Ohio, based on respondent's assertion that he could not physically travel to Columbus.  At 7:46 a.m. on the day of the deposition, respondent left a telephone message at relator's office in Columbus explaining that he had suffered a physical injury that morning that prevented his appearance at the deposition.  Relator and respondent agreed that respondent would contact relator when he had sufficiently recovered to sit for the deposition.  Respondent failed to reschedule the deposition.

{¶ 6}   We accept the board's findings that respondent violated Prof.Cond.R.  8.4(d) (prohibiting conduct prejudicial to the administration of justice) and 8.4(h) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice law) and Gov.Bar R.  V(4)(G).

*Count III – The Forgus Grievance*

{¶ 7}   In August 2002, Erica Forgus hired respondent to represent her in a personal-injury claim resulting from an automobile accident in Ohio.  At the time,

Forgus resided in Illinois, but in June 2004, she moved to Switzerland. Respondent filed a complaint on her behalf in the Portage County Court of Common Pleas in 2003, but in September 2005, the month before trial, he decided to voluntarily dismiss the complaint. Although he wrote Forgus a letter and left her a telephone message seeking her input, he nonetheless voluntarily dismissed the complaint without waiting for her response or her consent. At that point, Forgus had already purchased a transatlantic plane ticket so that she could appear at trial.

{¶ 8} Fifteen days later, respondent received a settlement offer and contacted Forgus, recommending that she accept it. Forgus did not accept the offer at that time and told respondent that they would discuss it further when she arrived in Ohio the following week. Contrary to her directive, respondent accepted the settlement offer. Further, he forged Forgus's name on the settlement check, and on October 4, 2005, he deposited the funds into his attorney trust account. Respondent then prepared a settlement statement reflecting his 40 percent contingency fee of $7,000, expenses in the amount of $1,511.26, and a disbursement of $9,000 to Forgus. After he arrived two and one-half hours late for a meeting scheduled with Forgus and argued with her, she refused to sign the settlement statement. Respondent subsequently mailed a check for $9,000 to Forgus at her parents' address. After he realized that he had failed to deduct funds to pay her medical expenses from her share of the settlement, respondent stopped payment on the check on November 17, 2005, promising to issue a new one after he had paid her medical bills. Records from respondent's attorney trust account show that it often had a balance of less than $9,000 during the time respondent retained Forgus's money.

{¶ 9} After hearing nothing from respondent, Forgus contacted the Beachwood Police Department, which launched a criminal investigation. Respondent pleaded guilty to one count of theft as a fifth-degree felony and paid

restitution to Forgus in April 2007 as a condition of his agreement to plead to a reduced charge.

{¶ 10} We accept the board's findings that respondent misappropriated Forgus's money and violated DR 1-102(A)(4), 1-102(A)(5), 1-102(A)(6), 7-101(A)(3) (prohibiting a lawyer from prejudicing or damaging his client during the course of the professional relationship), 9-102(B)(3), and 9-102(B)(4).

*Count IV – Felony Conviction*

{¶ 11} On November 1, 2006, the state of Ohio indicted respondent on fourth-degree-felony charges of theft, forgery, and uttering a forged document based on his forging Forgus's signature on her settlement check, cashing it, and misappropriating those funds. The court set the case for trial on April 9, 2007, but respondent arrived late. After the jury had been impaneled, the parties negotiated a plea agreement. The state amended the complaint to charge respondent with one count of theft as a felony of the fifth degree. Respondent pleaded guilty to that charge, and the court dismissed the forgery and uttering charges. The court delayed sentencing for a month and ordered respondent to pay restitution of almost $12,000 in four days.

{¶ 12} At his sentencing hearing, respondent admitting using cocaine and marijuana after his plea hearing, resulting in his failing a court-ordered drug test. He also admitted paying the restitution late. The court sentenced respondent to community control, in-patient drug treatment, and community service. In addition, the court ordered respondent not to practice law.

{¶ 13} We accept the board's findings that respondent violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d), and 8.4(h).

*Count V – Practicing Law while under Suspension*

**{¶ 14}** On October 23, 2007, this court imposed an interim suspension on respondent following his felony conviction for theft. *In re Sabroff*, 115 Ohio St.3d 1435, 2007-Ohio-5636, 875 N.E.2d 98. Notwithstanding his suspension from the practice of law, less than a month later, respondent sent a letter to the Cleveland Heights Municipal Court on behalf of his son, who had been charged with a traffic violation. Respondent used letterhead referring to himself as "Attorney and Counselor at Law," and in the letter, he entered a plea of not guilty, waived all statutory time requirements, and sought the scheduling of a pretrial hearing. After relator apparently contacted respondent inquiring whether he had practiced law with a suspended license, respondent sent a letter to the municipal court explaining that he had "decided to withdraw as counsel" for his son because of "a plethora of physical problems."

**{¶ 15}** We accept the board's finding that respondent violated Prof.Cond.R. 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction) and Gov.Bar R. V(8)(E) (requiring a lawyer to notify opposing counsel and the court of his disqualification to practice law).

*Count VI – Commingling Client and Personal Funds*

**{¶ 16}** Between December 1, 2004, and February 28, 2006, respondent maintained an attorney trust account at Huntington National Bank and used it to pay his cable, credit card, telephone, and electric bills, insurance premiums, college tuition, and his attorney registration fee, and he wrote numerous checks out of this account made payable to "Cash." The words "IOLTA [Interest on Lawyers' Trust Accounts] ACCOUNT" appear on the front of the checks in bold letters. During this same time period, respondent deposited checks received for settling the personal-injury claims of clients into this same account.

**{¶ 17}** We accept the board's finding that respondent violated DR 1-102(A)(4), 1-102(A)(6), and 9-102(A) (requiring all funds of clients paid to a

lawyer to be deposited in one or more identifiable bank accounts containing no funds belonging to the lawyer).

**Sanction**

{¶ 18} When imposing sanctions for attorney misconduct, we consider a number of factors, including the duties the lawyer violated, the lawyer's mental state, and sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren*, 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 19} Respondent's failure to cooperate in the investigatory process prevents us from determining whether his health issues and chemical dependency mitigate his misconduct. See BCGD Proc.Reg. 10(B)(2)(g). Regarding aggravating factors, we accept the board's findings that respondent acted with a dishonest or selfish motive, engaged in a pattern of misconduct, committed multiple offenses, failed to cooperate in the disciplinary process, and refused to acknowledge the wrongful nature of his conduct. BCGD Proc.Reg. 10(B)(1)(b), (c), (d), and (e). We also accept the finding that respondent has not made restitution to the Sebolds for the funds stolen from them and that he paid restitution to Forgus only after being ordered to do so as a condition of his plea agreement. BCGD Proc.Reg. 10(B)(1)(i).

{¶ 20} The primary purpose of the disciplinary process is to protect the public from lawyers who are unworthy of the trust and confidence essential to the

attorney-client relationship and to allow us to ascertain the lawyer's fitness to practice law. *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10. Respondent's misappropriation of his clients' funds, his felony conviction, his dishonesty, his settlement of a personal-injury claim against the express instructions of his client, his forgery of a client's signature on the settlement check, his practice of law with a suspended license, his failure to notify the municipal court of his disqualification from practice, his commingling of personal and client funds, his engagement in a pattern of misconduct, and his failure to cooperate in the disciplinary process demonstrate that he is no longer fit to practice law.

**{¶ 21}** We have previously explained that "misappropriation of client funds carrie[s] a 'presumptive sanction of disbarment.' " *Trumbull Cty. Bar Assn. v. Kafantaris*, 121 Ohio St.3d 387, 2009-Ohio-1389, 904 N.E.2d 875, ¶ 14, quoting *Cleveland Bar Assn. v. Dixon*, 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, ¶ 15. Similarly, " 'permanent disbarment is an appropriate sanction for conduct that violates DR 1-102 and results in a felony conviction.' " *Disciplinary Counsel v. Stern*, 106 Ohio St.3d 266, 2005-Ohio-4804, 834 N.E.2d 351, ¶ 8, quoting *Disciplinary Counsel v. Gallagher* (1998), 82 Ohio St.3d 51, 52, 693 N.E.2d 1078. Further, " '[t]he normal penalty for continuing to practice law while under suspension is disbarment.' " *Disciplinary Counsel v. Frazier*, 110 Ohio St.3d 288, 2006-Ohio-4481, 853 N.E.2d 295, ¶ 54, quoting *Disciplinary Counsel v. Allison,* 98 Ohio St.3d 322, 2003-Ohio-776, 784 N.E.2d 695, ¶ 12, and *Disciplinary Counsel v. Mbakpuo,* 98 Ohio St.3d 177, 2002-Ohio-7087, 781 N.E.2d 208, ¶ 13. See also *Medina Cty. Bar Assn. v. Wootton,* 110 Ohio St.3d 179, 2006-Ohio-4094, 852 N.E.2d 175, ¶ 10 (disbarring attorney for theft of his clients' funds, dishonesty, financial harm to his clients, and the failure to cooperate).

**{¶ 22}** Respondent has not challenged the board's findings of misconduct or the recommended sanction of permanent disbarment. Based on respondent's conduct and our precedent, respondent is hereby permanently disbarred from the practice of law in the state of Ohio.

**{¶ 23}** Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Jonathan Coughlan, Disciplinary Counsel, and Robert G. Berger, Assistant Disciplinary Counsel, for relator.

_____