[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Pryatel,* Slip Opinion No. 2016-Ohio-865.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-865

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* PRYATEL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Pryatel,* Slip Opinion No. 2016-Ohio-865.]**

*Attorneys—Misconduct—Practicing law while under suspension for serious misconduct—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Engaging in conduct prejudicial to administration of justice—Making false statement of material fact in disciplinary matter—Permanent disbarment.*

(No. 2015-1005—Submitted October 28, 2015—Decided March 9, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-037.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Mark Robert Pryatel, of Cleveland, Ohio, Attorney Registration No. 0019678, was admitted to the practice of law in Ohio in 1983.  On

April 24, 2013, we indefinitely suspended him for, among other things, misappropriating settlement funds from an imprisoned client, making a false statement to a court, misusing his client trust account, charging an illegal or clearly excessive fee, and neglecting a client matter. *Cleveland Metro. Bar Assn. v. Pryatel*, 135 Ohio St.3d 410, 2013-Ohio-1537, 988 N.E.2d 541, ¶ 4-8.

{¶ 2} In May 2014, relator, Cleveland Metropolitan Bar Association, charged him with continuing to practice law during his suspension and engaging in dishonest conduct. Based on the evidence presented at a hearing before a three-member panel of the Board of Professional Conduct, the panel found that Pryatel engaged in the charged misconduct and recommended that we permanently disbar him from the practice of law in Ohio. The board adopted the panel's findings and recommendation. Pryatel has filed objections to the board's recommendation, challenging both the board's findings of misconduct and the recommended sanction.

{¶ 3} Based on our independent review of the record, we overrule Pryatel's objections, accept the board's findings, and agree that disbarment is the appropriate sanction in this case.

**Misconduct**

{¶ 4} The board found that Pryatel represented Richard Brazell in three court proceedings after we had suspended Pryatel on April 24, 2013. First, Pryatel appeared with Brazell at a probation-violation hearing in the Cleveland Municipal Court on June 3, 2013. At the disciplinary hearing, relator played a video of the probation-violation proceeding, which showed Pryatel, having identified himself, standing with Brazell at the court's lectern, admitting the probation violation on Brazell's behalf, and setting forth mitigation evidence. Additionally, at the disciplinary hearing, Brazell's girlfriend and stepfather testified that less than a month before the probation-violation hearing, they had met with Pryatel to discuss the representation and that Brazell's girlfriend had paid him $450, a portion of

which was meant as a retainer for the probation matter. Brazell, Brazell's girlfriend, Brazell's stepfather, and Brazell's mother also testified at the disciplinary hearing that Pryatel never informed them that his license was suspended.

{¶ 5} Second, the board found that on June 5, 2013, Pryatel represented Brazell in an arraignment on unrelated charges in the Rocky River Municipal Court. At the disciplinary hearing, relator submitted an audio recording of the arraignment, which demonstrated that Pryatel had spoken on Brazell's behalf, entered a not-guilty plea, and waived Brazell's rights to a speedy trial and a jury. The audio recording also indicated that after Pryatel had waived Brazell's rights, he informed the court's magistrate that he had represented Brazell two days earlier at a probation-violation hearing and that he would probably enter an appearance in the Rocky River case, but that until he and Brazell worked out their business relationship, Brazell was pro se "for now." At the disciplinary hearing, the magistrate testified that Pryatel did not indicate that this court had suspended his license, and Brazell and his girlfriend testified that they had paid Pryatel $50 for his services at the arraignment.

{¶ 6} Third, the board found that Pryatel represented Brazell on July 9, 2013, at a pretrial in the Rocky River Municipal Court. At the disciplinary hearing, the Rocky River city prosecutor testified that it was his belief that he and Pryatel had negotiated a plea agreement for Brazell immediately prior to the pretrial, and Rocky River Municipal Court Judge Brian F. Hagan testified that during the pretrial, Pryatel stood with Brazell before the bench, participated in the judge's plea colloquy, and directly answered the judge's questions, including whether Brazell had stipulated to a finding of guilty. Brazell similarly testified that he had considered Pryatel his lawyer for the pretrial and that Pryatel stood with him in front of the judge during the plea colloquy, spoke to the judge on his behalf, and entered a plea for him.

**{¶ 7}** Upon learning of Pryatel's conduct, relator conducted an investigation and deposed Pryatel regarding the allegations that he had continued to practice law during his suspension. Throughout the disciplinary process, Pryatel maintained that he had not represented Brazell after his suspension. At his deposition, he testified that he had not appeared with Brazell at the probation-violation hearing in the Cleveland Municipal Court, that he had informed Brazell and his family members that he had been suspended, that he was not paid for any legal work performed after his suspension, and that he did not stand before the bench with Brazell or address Judge Hagan during the pretrial in Rocky River Municipal Court. All of these statements were later contradicted by testimonial, video, audio, and documentary evidence presented at the disciplinary hearing.

**{¶ 8}** The board found that Pryatel's conduct violated Prof.Cond.R. 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction), 8.1(a) (prohibiting knowingly making a false statement of material fact in connection with a disciplinary matter), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

**{¶ 9}** Pryatel objects to the board's findings of misconduct. He primarily argues that his conduct before the Rocky River Municipal Court did not constitute the "practice of law" because he did not engage in advocacy, cross-examine any witnesses, cite legal authority, or prepare, sign, or file any legal documents. Pryatel further points to the fact that he had informed the court's magistrate that Brazell was pro se.

**{¶ 10}** The practice of law, however, is not limited to advocacy for a specific legal position or the filing of legal documents. We have previously explained that "[a]ny definition of the practice of law inevitably includes representation before a court, as well as the preparation of pleadings and other legal

documents, the management of legal actions for clients, all advice related to law, and all actions taken on behalf of clients connected with the law." *Cleveland Bar Assn. v. CompManagement, Inc.*, 111 Ohio St.3d 444, 2006-Ohio-6108, 857 N.E.2d 95, ¶ 22. Here, the evidence demonstrated that Pryatel accompanied Brazell to the court, stood with him before the bench, spoke on his behalf, waived his legal rights as a criminal defendant, and entered a plea for him. Under any definition, Pryatel's appearances on behalf of Brazell constituted the practice of law. And the mere fact that Pryatel told the court—after waiving Brazell's rights—that Brazell was pro se "for now" does not insulate Pryatel from a finding that he was practicing law. *See Cincinnati Bar Assn. v. Telford*, 85 Ohio St.3d 111, 113, 707 N.E.2d 462 (1999) (an individual's disclaimer that he was not an attorney and was not giving legal advice did not insulate him from a finding that he had engaged in the unauthorized practice of law).

**{¶ 11}** Pryatel also claims that relator violated his due process rights, as interpreted by *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when allegedly exculpatory evidence about the July 9 pretrial in the Rocky River Municipal Court was either destroyed or not preserved and when the judge failed to audio-record the hearing. Pryatel, however, has not established that relator destroyed or suppressed any such evidence, and, regardless, we have previously explained that the " 'standards of due process in a disciplinary proceeding are not equal to those in a criminal matter.' " *Disciplinary Counsel v. Character*, 129 Ohio St.3d 60, 2011-Ohio-2902, 950 N.E.2d 177, ¶ 76, quoting *In re Judicial Campaign Complaint Against Carr*, 76 Ohio St.3d 320, 322, 667 N.E.2d 956 (1996). "[D]ue process requirements in attorney-discipline proceedings have been satisfied when the respondent is afforded a hearing, the right to issue subpoenas and depose witnesses, and an opportunity for preparation to explain the circumstances surrounding his actions." *Id.* In this case, the board held a two-day hearing, Pryatel had the opportunity to depose and cross-examine all of relator's witnesses, and

Pryatel had the opportunity to explain his conduct during his testimony. Accordingly, Pryatel has not established that the board violated his due process rights.

{¶ 12} Finally, Pryatel asserts that the board erred in considering the allegation that he practiced law in the Cleveland Municipal Court because relator "sandbag[ged]" him with those charges and with the video of the probation-violation hearing. The record shows, however, that Pryatel had ample opportunity to respond to the allegations and the evidence supporting relator's charges. Specifically, relator filed an amended complaint setting forth the Cleveland Municipal Court allegations on November 5, 2014, a month before the scheduled December 5 hearing. At the disciplinary hearing, relator presented its case-in-chief, but the panel continued the matter so that Pryatel would have an opportunity to conduct discovery regarding the new allegations in the amended complaint. Two weeks later, relator received a video of the probation-violation hearing from the Cleveland Municipal Court, and relator immediately sent a copy to Pryatel's counsel. On January 30, 2015, relator moved to supplement its case-in-chief with the video, and when the hearing resumed on February 5, 2015, the panel members admitted the video into evidence.

{¶ 13} Other than his blanket assertions that he was "sandbag[ged]" by the Cleveland allegations and the video, Pryatel offers no argument explaining how he was prevented from asserting an adequate defense because of the amended complaint or the belated introduction of the video. Gov.Bar R. V and the regulations relating to disciplinary proceedings "are to be construed liberally for the protection of the public, the courts, and the legal profession." *Disciplinary Counsel v. Heiland*, 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, ¶ 34. Here, Pryatel has failed to establish that the board abused its discretion by considering the allegations and evidence regarding Pryatel's conduct in the Cleveland Municipal Court.

**{¶ 14}** Accordingly, Pryatel's objections are overruled, and we accept the board's findings of misconduct.

### Sanction

**{¶ 15}** When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the sanctions imposed in similar cases, and the aggravating and mitigating factors listed in Gov.Bar R. V(13).

### *Aggravating and mitigating factors*

**{¶ 16}** The board found the following aggravating factors: prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, a lack of cooperation in the disciplinary process, the submission of false statements during the disciplinary process, and a refusal to acknowledge the wrongful nature of the conduct. *See* Gov.Bar R. V(13)(B)(1), (2), (3), (4), (5), (6), and (7). Although the board acknowledged that Pryatel has been involved with the Ohio Lawyers Assistance Program, the board found no mitigating factors.

**{¶ 17}** In his objections, Pryatel argues that the board's analysis fails to account for the following: his conduct involved a single client, the client benefited from his assistance, he had helped the client for "sympathetic and altruistic reasons," he cooperated in the disciplinary process by making himself available for a deposition, and he has a history of providing quality legal services for indigent clients. We disagree.

**{¶ 18}** Specifically, the board did not err in refusing to give Pryatel mitigating credit merely because his conduct involved a single client or because he did not specifically harm that client. *Compare Lorain Cty. Bar Assn. v. Zubaidah*, 140 Ohio St.3d 495, 2014-Ohio-4060, 20 N.E.3d 687, ¶ 47 ("Even good intentions do not override the prohibition against the unauthorized practice of law"). Similarly, given Pryatel's false statements during his deposition, the board correctly concluded that he had failed to cooperate in the disciplinary process. And Pryatel's

objections do not sufficiently explain the allegedly altruistic reasons for his unauthorized practice of law; nor do his objections indicate that he submitted any additional character or reputation evidence in this case—rather than simply relying on the character evidence submitted in his previous disciplinary matter. Accordingly, we overrule Pryatel's objections to the board's analysis of the relevant mitigating and aggravating factors.

*Applicable precedent*

{¶ 19} To support its recommendation of disbarment, the board cited *Disciplinary Counsel v. Sabroff*, 123 Ohio St.3d 182, 2009-Ohio-4205, 915 N.E.2d 307, and *Disciplinary Counsel v. Caywood*, 74 Ohio St.3d 596, 660 N.E.2d 1148 (1996). In *Sabroff*, the attorney misappropriated client funds, which resulted in a felony conviction for theft. Less than a month after we imposed an interim felony suspension, the attorney sent a letter to a municipal court on behalf of his son, who had been charged with a traffic violation. The attorney's letterhead referred to himself as "Attorney and Counselor at Law," and in the letter, the attorney entered a plea of not guilty, waived all statutory time requirements, and sought the scheduling of a pretrial. *Sabroff* at ¶ 11-14. We found that the attorney's conduct violated Prof.Cond.R. 5.5(a) and noted that the " ' 'normal penalty for continuing to practice law while under suspension is disbarment.' ' " *Id.* at ¶ 21, quoting *Disciplinary Counsel v. Frazier*, 110 Ohio St.3d 288, 2006-Ohio-4481, 853 N.E.2d 295, ¶ 54, quoting *Disciplinary Counsel v. Allison,* 98 Ohio St.3d 322, 2003-Ohio-776, 784 N.E.2d 695, ¶ 12. Accordingly, we permanently disbarred the attorney from the practice of law. We similarly disbarred the attorney in *Caywood* after he appeared in court on behalf of a client about a month after we had indefinitely suspended him.

{¶ 20} In his objections, Pryatel argues that in recommending disbarment, the board followed the "Successively-Higher Sanction Doctrine," which Pryatel claims is inconsistent with the purpose of sanctions in attorney-discipline cases.

However, there is no such doctrine, and there is no indication in the board report that it followed anything other than our precedent. Pryatel also cites a string of allegedly "analogous decisions" to support a lesser sanction than disbarment. Some of the cases relied on by Pryatel, however, do not involve the same misconduct as this case—namely, practicing law while under suspension. And in the cases in which an attorney had committed the same misconduct but was not disbarred, the prior suspension was usually for failing to register as an attorney or failing to comply with continuing-legal-education requirements—not, as here, for serious professional misconduct, such as misappropriation of client funds.

**{¶ 21}** Accordingly, we agree with the board that *Sabroff* and *Caywood* support the sanction of disbarment in this case. Less than three months after our order forbidding Pryatel to appear on behalf of another before any court, he represented a client in three court proceedings. As the board found, his actions defy logic and reason, especially his insistence that his conduct at those hearings did not constitute the practice of law. We recently reaffirmed that "our precedent provides that disbarment is the presumptive sanction for an attorney who continues to practice law while under suspension." *Cleveland Metro. Bar Assn. v. Brown*, 143 Ohio St.3d 333, 2015-Ohio-2344, 37 N.E.3d 1199, ¶ 15. Given Pryatel's misconduct, the profusion of aggravating factors, and the lack of any mitigating factors, Pryatel has not established a justification for departing from the presumptive sanction.

### Conclusion

**{¶ 22}** For the reasons explained above, Mark Robert Pryatel is permanently disbarred from the practice of law in Ohio. Costs are taxed to Pryatel.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, and O'NEILL, JJ., concur.

PFEIFER, KENNEDY, and FRENCH, JJ., dissent and would impose an indefinite suspension.

_____

Dunson Law, L.L.C., and Joseph P. Dunson; and Norman & Tayeh, L.L.C., and William B. Norman; and Heather Zirke, Bar Counsel, for relator.

Kastner, Westman & Wilkins, L.L.C., and Keith L. Pryatel; and Wegman, Hessler & Vanderburg and Steven E. Pryatel, for respondent.

_____