[Cite as *State v. Armstead*, 2021-Ohio-4000.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200417 |
| | | TRIAL NO.  C-19CRB-22585 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| VAN ARMSTEAD, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 10, 2021


*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Krista M. Gieske*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Following a jury trial, defendant-appellant Van Armstead was convicted of voyeurism in violation of R.C. 2907.08(B). He has appealed, arguing in three assignments of error that (1) the trial court erred in admitting other-acts evidence in violation of Evid.R. 402, 403, and 404; (2) his conviction was based upon insufficient evidence and against the manifest weight of the evidence; and (3) the trial court erred by ordering the forfeiture of his cell phone.

{¶2} For the following reasons, we overrule all three assignments of error and affirm the judgment of the trial court.

### *Factual Background*

{¶3} Michael Combs testified that on September 4, 2019, he was shopping at Lowe's Home Improvement Store in Springdale, Ohio, when he had to use the restroom. He entered one of the stalls in the men's restroom. He removed his pants and underwear and sat down on the toilet. After a couple of minutes, he glanced down and saw a cell phone underneath the partition between bathroom stalls. He testified that the cell phone was "coming in and out" under the partition. He pulled up his pants, exited from the stall, washed his hands, and exited from the restroom. He notified a store employee who called the police.

{¶4} Springdale Police Officer Kellen Lyons responded to the scene. Video from Lyons's body camera was played at trial. Lyons and another officer entered the restroom and confronted Armstead. Armstead initially denied any wrongdoing, but then admitted that he took a video of Combs under the stall partition because Combs

was making "strange" noises. Upon further questioning, Armstead stated that officers would find additional similar videos of other people on his phone.

{¶5} Armstead was arrested and a search warrant was obtained for his cell phone. Lyons testified that he searched Armstead's phone and discovered close to 30 videos of men surreptitiously recorded in restroom stalls. None of the videos depicted Combs. The trial court permitted the state to play one of the videos as representative of the nearly 30 videos recovered. The representative video is approximately 18 seconds long. It showed Armstead place his phone under the partition between bathroom stalls and secretly record video of a man sitting on the toilet with his pants and underwear around his ankles. Lyons testified that the video was representative of the other videos discovered on Armstead's phone, except "there were some other videos that showed the private parts more of some other individuals."

{¶6} The state also played video recordings of Armstead's interrogation at the police station. Armstead was repeatedly asked why he recorded Combs. Armstead was either silent or said that he didn't know why or couldn't explain why. He stated that the videos were like videos he had seen on Twitter, but he denied posting the videos he recorded on Twitter. He admitted that he recorded the videos to watch them, but denied masturbating to the videos. When asked whether he got pleasure or gratification out of the videos, he responded, "Just watching it I guess."

{¶7} For ease of discussion, we address Armstead's assignments of error out of order.

*Second Assignment of Error*

{¶8}    In his second assignment of error, Armstead contends that his conviction was based upon insufficient evidence and against the manifest weight of the evidence.

{¶9}    The test for determining the sufficiency of the evidence is whether "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. Scott,* 1st Dist. Hamilton Nos. C-200385 and C-200403, 2021-Ohio-3427, ¶ 23, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  It is a question of law for the court to determine, the court is not to weigh the evidence. *Scott* at ¶ 23.  "When evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment." *Id.*, quoting *In re J.C.,* 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 20.

{¶10}   R.C. 2907.08(B) states, "No person, for the purpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another to videotape, film, photograph, or otherwise record the other person in a state of nudity."

{¶11}   Armstead admits that he filmed Combs, but argues that the state failed to prove that he did so for the purpose of sexual arousal or gratification.

{¶12}   There is no direct evidence that Armstead filmed Combs for the purpose of sexual arousal or gratification. But the elements of a crime may be proven by circumstantial evidence.

Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.

*State v. Lowery*, 160 Ohio App.3d 138, 2005-Ohio-1181, 826 N.E.2d 340, ¶ 19 (1st Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus.

{¶13} Circumstantial evidence is " 'proof of facts or circumstances by direct evidence from which [the factfinder] may reasonably infer other related or connected facts that naturally flow according to the common experience of people.' " *State v. Barnthouse*, 1st Dist. Hamilton No. C-180286, 2019-Ohio-5209, ¶ 16, quoting *State v. Shabazz*, 145 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119, ¶ 18, quoting *Ohio Jury Instructions,* CR Section 409.01(4) (Rev. Aug. 17, 2011). "[W]hen we delve into questions of intent, circumstantial evidence is often all that we have." *Barnthouse* at ¶ 16.

{¶14} Courts have held that the sexual arousal or gratification element " 'may be inferred when there is no innocent, i.e., nonsexual, explanation for the offender's conduct.' " *Cleveland v. Imrie*, 8th Dist. Cuyahoga No. 109226, 2021-Ohio-308, ¶ 15, citing *State v. Goldblum*, 2d Dist. Montgomery No. 25851, 2014-Ohio-5068, ¶ 17, quoting *State v. Wilson*, 192 Ohio App.3d 189, 2011-Ohio-155, 948 N.E.2d 515, ¶ 47 (11th Dist.); *see State v. Haldeman*, 2d Dist. Montgomery No. 18199, 2000 WL 1726858, *3 (Nov. 22, 2000) ("The fact that Defendant was neither in a state of

undress nor had engaged in masturbation does not prevent a finding that his purpose was sexual gratification or arousal, if that can rationally be inferred from other evidence presented."); *State v. Huffman*, 165 Ohio App.3d 518, 2006-Ohio-1106, 847 N.E.2d 58, ¶ 64 (1st Dist.) ("Given Huffman's secretive tactics and his evident interest in sexually explicit material, the trier of fact could have reasonably inferred that Huffman's acts were done for the purpose of sexual arousal or self-gratification."); *City of Huron v. Holsapple*, 6th Dist. Erie No. E-96-063, 1997 WL 457971, *3 (Aug. 8, 1997) (finding that the defendant acted for the purpose of sexual gratification where "[t]he testimony show[ed] that appellant was looking at the victim through her window during a time in the morning when the victim, a fourteen-year-old girl, was dressing for school and that appellant was moving up and down the ladder as if to get a better vantage point.").

{¶15} *Imrie* and the present case bear a striking resemblance. In *Imrie,* the defendant recorded the victim while she was in a bathroom stall by putting his cell phone underneath the partition between stalls. *Imrie* at ¶ 3. The defendant argued that the state failed to prove that he recorded the victim for the purpose of sexual arousal or gratification. *Id.* at ¶ 15. The court held:

> Imrie's behavior of sitting on a toilet with his pants up, moving his cellphone towards Farrier's stall while she sat on the toilet with her pants down, and moving his cellphone back and forth under her stall is sufficient evidence surrounding the incident from which a purpose of sexual arousal or gratification could be inferred. Given Imrie's secretive tactics and unusual conduct, we conclude that the trier of fact could have

6

reasonably inferred that his actions were done for the purpose of sexual arousal or gratification.

*Id.* at ¶ 17.

{**¶16**} Armstead's "secretive tactics and unusual conduct" were proven by direct evidence—Combs's testimony and Armstead's admission that he recorded Combs. Armstead offered innocent explanations for his conduct by telling Lyons that he recorded Combs because Combs was making weird noises and because he had seen similar videos on Twitter. But he could not explain why either justification led him to record close to 30 videos. This permitted the jury to infer that Armstead acted with a sexual purpose. *See id.* at ¶ 17.

{**¶17**} In reviewing a claim that a conviction is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact, in resolving conflicts in the evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Reversal of a conviction and a grant of a new trial should only be done in the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{**¶18**} "The trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented." *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16.

{**¶19**} Armstead argues that his repeated denials of filming Combs for the purpose of sexual gratification means that his conviction was against the manifest weight of the evidence. But as stated above, there was sufficient evidence for the jury

to infer that Armstead filmed Combs for the purpose of sexual arousal or gratification. The fact that the jury did not believe Armstead does not lead this court to conclude that the jury clearly lost its way in finding that he acted for the purpose of sexual arousal or gratification.

{¶20} The second assignment of error is overruled.

### First Assignment of Error

{¶21} In his first assignment of error, Armstead contends that the trial court erred in admitting other-acts evidence in violation of Evid.R. 402, 403, and 404. He argues that the court should have excluded any reference to the videos recovered from his phone and should not have permitted the state to play the representative video at trial.

{¶22} Evid.R. 404(B) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

{¶23} Recently, the Ohio Supreme Court extensively addressed Evid.R. 404(B) in *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651. It sought to provide a roadmap for lower courts to follow when determining whether other-acts evidence should be admitted under Evid.R. 404(B) as evidence "for other purposes" or should be excluded as propensity evidence.  *Id.* at ¶ 19. The admissibility of other-acts evidence under Evid.R. 404(B) is a question of law we review de novo. *Id.* at ¶ 22.

8

**Evid.R. 404(B)**

{¶24} "[O]ther-act evidence is usually capable of being used for multiple purposes, one of which is propensity." *Hartman* at ¶ 23. "For that reason, it is 'not enough for the proponent of the other-act evidence simply to point to a purpose in the "permitted" list and assert that the other-act evidence is relevant to it.' " *Id.*, quoting *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir.2014) (en banc). Rather, courts must "scrutinize the proponent's logic to determine exactly how the evidence connects to a proper purpose without relying on any intermediate improper-character inferences." *Hartman* at ¶ 23.

{¶25} When analyzing the connection between the proposed other-acts evidence and a permissible purpose, the first step is to determine whether the evidence is relevant, not to guilt, but to a particular nonpropensity purpose. *Id.* at ¶ 26. The nonpropensity purpose for which the evidence is offered must go to a material fact that is actually in dispute. *Id.* at ¶ 27.

{¶26} First, Armstead argues that the trial court erred by allowing the state to list multiple inapplicable nonpropensity purposes and did not hold the state to its burden of explaining how the facts of the case connected with any of the purposes.

{¶27} The issue of other-acts evidence came up multiple times during the case. Each time the issue arose, the state offered multiple nonpropensity purposes for the evidence, many of which were inapplicable. However, the state also repeatedly highlighted the evidence's relevance to Armstead's intent. In response to Armstead's motion in limine to exclude the evidence, the state argued, "the fact that [Armstead] is a collector of these [videos], shows the intent behind actual videotaping which we believe was for sexual purposes because why else does

anybody record someone using the bathroom surreptitiously?" Shortly before trial, defense counsel again objected to the use of the other-acts evidence and the state argued, "The [other-acts evidence] is going to show that the defendant's explanation for why he was recording was something to the effect that I was just checking to see who was in the other stall. Having multiple videos of him recording other individuals is going to show that that explanation was false." The trial court recognized the state was required to prove Armstead acted with the specific intent of sexual arousal or gratification, and held the evidence was admissible to show intent and plan.

{¶28} The state made the required connection between the evidence and Armstead's intent. Furthermore, the court, as the gatekeeper of the evidence, had the discretion to admit the other-acts evidence in a manner it found consistent with Evid.R. 404(B).

{¶29} Next, Armstead argues that the trial court erred in finding the other-acts evidence admissible to show plan or intent.

{¶30} "Evidence of a plan or common design refers to a larger criminal scheme of which the crime charged is only a portion." *Hartman,* 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, at ¶ 40. The other acts are linked to the crime charged because they are carried out in furtherance of the same overall plan. *Id.* "The other acts form the 'immediate background' of the present crime: they are typically either part of the 'same transaction' as the crime for which the defendant is on trial or they are part of 'a sequence of events' leading up to the commission of the crime in question." *Id.* at ¶ 41, quoting Weissenberger, *Federal Evidence*, Section 404.18 (7th Ed.2019).

**{¶31}** Armstead's recording of other individuals was not linked to an overarching plan to record Combs. The acts, while essentially identical in nature, are distinct. "Plan" was not a viable nonpropensity purpose in this case.

**{¶32}** The other nonpropensity purpose cited by the trial court was "intent." Evidence offered for this purpose must be carefully scrutinized. "There is a thin line between the permissible use of other-acts evidence to show intent and the impermissible use to show propensity. Allowing other-acts evidence to prove the defendant's state of mind 'flirts dangerously with eviscerating the character evidence prohibition' altogether.' " *Hartman* at ¶ 57, quoting Leonard, *The New Wigmore: Evidence of Other Misconduct and Similar Events*, Section 7.4 (2d Ed.2019).

**{¶33}** Intent evidence is inadmissible when the requisite intent is inferred from proof of the crime itself or when intent is not at issue at all. *Id.* at ¶ 55.

When a defendant is charged with a specific-intent crime, however, the specific intent becomes a material issue in the case. Consider a theft offense, which requires proof that the defendant took property with the purpose of depriving the owner of it; evidence that the defendant immediately pawned the property might be probative of his specific intent to permanently deprive.

(Citation omitted.) *Id.*

To determine whether other-acts evidence is genuinely probative of the intent of the accused to commit the charged crime, rather than merely the accused's propensity to commit similar crimes, the question is whether, "*under the circumstances, the detailed facts* of the charged and uncharged offenses strongly suggest that an innocent explanation is

implausible." Or to put it another way, the other-acts evidence "must be so related to the crime charged in time or circumstances that evidence of the other acts is significantly useful in showing the defendant's intent in connection with the crime charged.

(Emphasis sic.) *Id.* at ¶ 58, quoting Leonard at Section 7.5.2, and 1 *Wharton's Criminal Evidence*, Section 4:31 (15th Ed.2019).

{¶34} Armstead argued at trial that the state had failed to prove that he filmed Combs for the purpose of sexual arousal, making his intent material to the outcome of the case. The fact that he had recorded approximately 30 videos of individuals going to the bathroom discredited his claims that he recorded Combs because he heard weird noises coming from Combs's stall or because he had seen similar videos on Twitter. Comparison of Armstead's actions in the charged crime and the videos recovered from his phone strongly suggests that his innocent explanations are implausible. *See Hartman,* 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, at ¶ 58. Therefore, the evidence is relevant to intent.

## Evid.R. 403

{¶35} Next, we must determine whether the evidence should nonetheless be excluded under Evid.R. 403(A). Once an appropriate nonpropensity purpose is established, the court must conduct an Evid.R. 403(A) analysis and determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Id.* at ¶ 29. Other-acts evidence "almost always carries some risk that the jury will draw the forbidden propensity inference." *Id.* at ¶ 33. Therefore, "it will often present the dangers that Evid.R. 403(A) seeks to protect against." *Id.* "Weighing the probative

value of the evidence against its prejudicial effect is a highly fact-specific and context-driven analysis." *Id.* at ¶ 30. Thus, the trial court's determination should be reviewed for an abuse of discretion. *Id.*

{¶36} The court must determine the degree to which the fact is actually contested, whether the prosecution is able to present alternative evidence to prove the same fact through less prejudicial means and whether the other-acts evidence is probative of an essential element of the crime or an intermediate fact in the case. *Id.* at ¶ 31-32.

> When a court concludes that other-acts evidence should be admitted, it must take steps to minimize the danger of unfair prejudice inherent in the use of such evidence and to ensure that the evidence is considered only for a proper purpose. Thus, a court should explain both the specific purpose for which the evidence may be considered and the rationale for its admission on the record.

*Id.* at ¶ 34.

{¶37} In the present case, the probative value of the other-acts evidence is high. The evidence is relevant to whether Armstead recorded Combs for sexual gratification, an essential element of the charge and the main issue at trial. The prosecution was not needlessly cumulative in its presentation, opting to only show one video representative of the other videos. Also, there were not less prejudicial means available to the prosecution to prove sexual gratification.

{¶38} Before the representative video was played, the court instructed the jury to limit its consideration of the other-acts evidence to questions of Armstead's intent or plan. It repeated the instruction in the final jury instructions. "Plan" was

not a viable nonproprensity purpose. But "intent" was. And the trial court properly instructed the jury not to consider the evidence for propensity purposes, which is the danger that Evid.R. 404(B) seeks to avoid.

{¶39} The danger of unfair prejudice is always high when other-acts evidence is admitted for purposes of proving intent. *Hartman,* 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, at ¶ 33. But the probative value of the evidence in this case was particularly high and was not substantially outweighed by the danger of unfair prejudice.

{¶40} The first assignment of error is overruled.

### *Third Assignment of Error*

{¶41} In his third assignment of error, Armstead argues that the trial court erred by ordering the forfeiture of his cell phone.

{¶42} R.C. 2981.02(A) identifies three types of property subject to forfeiture:

(a) Contraband involved in an offense;

(b) Proceeds derived from or acquired through the commission of an offense;

(c) An instrumentality that is used in or intended to be used in the commission or facilitation of any of the following offenses when the use or intended use, consistent with division (B) of this section, is sufficient to warrant forfeiture under this chapter:

(i) A felony;

(ii) A misdemeanor, when forfeiture is specifically authorized by a section of the Revised Code or by a municipal ordinance that creates the offense or sets forth its penalties;

OHIO FIRST DISTRICT COURT OF APPEALS

(iii) An attempt to commit, complicity in committing, or a conspiracy to commit an offense of the type described in divisions (A)(3)(a) and (b) of this section.

**{¶43}** A cell phone qualifies as an "instrumentality" under subsection (c). R.C. 2981.01(B)(6). However, an instrumentality is subject to forfeiture only where one of the conditions in R.C. 2981.02(A)(1)(c)(i)-(iii) are met.[1]

**{¶44}** Armstead was convicted of voyeurism in violation of R.C. 2907.08(B), a misdemeanor of the second degree. R.C. 2907.08(E)(1)(3). R.C. 2907.08 does not specifically authorize forfeiture for violations under that section. Therefore, none of the conditions in R.C. 2981.02(A)(1)(c)(i)-(iii) are met. The cell phone was not forfeitable under R.C. 2981.02.

**{¶45}** However, the state contends that Armstead waived any error that occurred. "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Id.*

**{¶46}** A negative response on the record to a trial court's invitation to raise an objection results in waiver of the unraised objection. *See State v. Searles*, 1st Dist. Hamilton Nos. C-190389, C-190395, C-190414 and C-190415, 2020-Ohio-5608, ¶ 12

---

[1] Condition (iii) references (A)(3)(a) and (b). But under the statute's current formulation, there is no (A)(3) division. "(A)(3)(a) and (b)" is meant to refer to (A)(1)(c)(i) and (ii). The legislature neglected to update the numbering when it amended the statute in 2018. Therefore, (iii) includes forfeiture for attempts, complicity, and conspiracy to commit the offenses described in (i) and (ii).

(holding there was "no question" the defendant waived the jury issue raised on appeal where defense counsel stated that there was "no objection" to the substitution of an alternate juror); *United States v. Romano*, 794 F.3d 317, 334 (2d Cir.2015) ("A strategic decision that is evidenced not merely by silence but by a negative response on the record to a district court invitation to voice objection, does more than forfeit the unraised objection; it waives it.") (Emphasis deleted.); *United States v. Lasanta-Sanchez*, 681 F.Appx. 32, 35 (1st Cir.2017), quoting *United States v. Gates*, 709 F.3d 58, 63 (1st Cir.2013) ("[A] party cannot concede an issue in the district court and later, on appeal, attempt to repudiate that concession and resurrect the issue.").

{¶47} At the sentencing hearing, the following exchange occurred:

Prosecutor: Judge I made an inquiry about the phone that is in the police evidence right now. I don't know if I have a clear directive on how you want to handle that.

Court: Well, what's the defense's position? Is there any objection to just forfeiting the phone?

Defense counsel: No, Judge.

Court: Okay. That probably makes that issue altogether easier.

{¶48} It is clear that Armstead waived any error that occurred in the forfeiture of his cell phone. Therefore, we will not review that issue on appeal, even for plain error. *Searles,* 1st Dist. Hamilton Nos. C-190389, C-190395, C-190414 and C-190415, 2020-Ohio-5608, at ¶ 11, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 23.

{¶49} The third assignment of error is overruled.

### *Conclusion*

**{¶50}** All three assignments of error are overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

**MYERS, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.