CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* HURLEY.

[Cite as *Cleveland Metro. Bar Assn. v. Hurley,*
143 Ohio St.3d 69, 2015-Ohio-1568.]

(No. 2014–1736—Submitted January 14, 2015—Decided April 29, 2015.)

_____

**Per Curiam.**

{¶ 1} Respondent, Rosel C. Hurley III of Cleveland, Ohio, Attorney Registration No. 0083288, was admitted to the practice of law in Ohio in 2008. In March 2013, we suspended his license on an interim basis following his felony convictions for unauthorized use of the Ohio Law Enforcement Gateway ("OHLEG") while he was employed by the Cuyahoga County prosecutor's office. *In re Hurley,* 134 Ohio St.3d 1491, 2013-Ohio-924, 984 N.E.2d 33. In November 2013, we suspended him for failing to register as an attorney for the 2013–2015 biennium. *In re Attorney Registration Suspension of Hurley,* 136 Ohio St.3d 1544, 2013-Ohio-4827, 996 N.E.2d 973.

{¶ 2} In September 2013, relator, the Cleveland Metropolitan Bar Association, charged Hurley with professional misconduct based on his felony convictions and two misdemeanor convictions for menacing and harassing his ex-wife. Upon review of the parties' stipulations and Hurley's testimony at the underlying panel hearing, the Board of Commissioners on Grievances and Discipline[1] recommends that we suspend Hurley for two years, with conditions on reinstatement, but grant credit for the time that he has served under his interim felony suspension.

{¶ 3} Upon our review of the record, we agree with the board's misconduct findings and recommended sanction, but we decline to grant Hurley any credit for time served under the interim felony suspension.

_____

1. Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

## Misconduct

{¶ 4} From October 2011 to April 2012, Hurley worked for the Cuyahoga County prosecutor's office and had access to OHLEG, a secure electronic information network that provides Ohio law-enforcement agencies with data on criminal histories and a myriad of other records. Hurley was also going through a divorce during that six-month period, and he accessed OHLEG between 30 and 40 times to obtain information about his ex-wife and children—despite knowing that OHLEG could not be used for personal reasons. In addition, he made harassing phone calls to his ex-wife and threatened her with physical harm.

{¶ 5} In October 2012, Hurley was charged with five counts of unauthorized use of property, a fifth-degree felony, for his illegal use of OHLEG and one count each of aggravated menacing and telephone harassment, first-degree misdemeanors, for threatening his ex-wife. Hurley pled guilty to all the charges, and in February 2013, he was sentenced to one year of community-control sanctions and ordered to pay a $5,000 fine. At the time of his panel hearing, Hurley testified that he had not yet paid the entire fine but that he was current on his court-approved payment plan.

{¶ 6} Based on this conduct, the parties stipulated and the board found that Hurley violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). We agree with these findings of misconduct. Relator withdrew its charged violation under Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law), and the panel therefore dismissed it.

## Sanction

{¶ 7} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).[2] *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. However, because each disciplinary case is unique, we are not limited to the factors specified in BCGD Proc.Reg. 10(B) and may take into account all relevant factors in determining which sanction to impose.

---

2. Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B)(1) and (2) are codified in Gov.Bar R. V(13), 140 Ohio St.3d CXXIV.

*Mitigating and aggravating factors*

{¶ 8} In mitigation, the board found that Hurley cooperated in the disciplinary proceedings, he self-reported his convictions to disciplinary counsel, other criminal penalties and sanctions have been imposed, and he has acknowledged his wrongful conduct. We agree that these mitigating factors are present in this case, although we give little weight to the fact that he acknowledged the wrongfulness of his conduct.

{¶ 9} The board found that Hurley was evasive in two areas. First, he initially testified that he had accessed OHLEG to obtain either his ex-wife's or his son's social-security number to resolve an insurance issue. However, as the board noted, Hurley did not adequately explain why he could not find that information from another source. Second, and of more concern, Hurley appeared to misunderstand the basis of his aggravated-menacing conviction. He testified that the conviction resulted from a verbal confrontation with his ex-wife's boyfriend in a grocery-store parking lot. After relator presented Hurley with a copy of the indictment—which states that the charge was premised on Hurley threatening his ex-wife—he responded that he "was under the impression that it dealt with the incident that happened in the parking lot." He later acknowledged that he had not closely read the indictment report and at the time he entered his guilty pleas, he just wanted the entire matter behind him. When panel members pressed him about the exact basis of the charge, Hurley could state only that his ex-wife must have felt threatened by a phone call he had made to her. If Hurley cannot identify his misconduct in detail, we cannot give him much mitigating credit for acknowledging that it was wrong.

{¶ 10} In aggravation, Hurley had a dishonest motive, and he was in a position of public trust as an assistant prosecutor. In addition, the board expressed concern about his "varied admissions and denials" regarding his alcohol use and his failure to comply with his contract with the Ohio Lawyers Assistance Program ("OLAP"). Specifically, the parties' stipulations state that Hurley resorted to alcohol to cope with the dissolution of his marriage. In January 2014, an OLAP counselor had diagnosed Hurley with alcohol dependence, and the counselor's report states that Hurley had indicated during his assessment that alcohol contributed to his felony convictions. Indeed, Hurley then signed a three-year OLAP contract in which he agreed to attend weekly Alcoholics Anonymous meetings, attend an intensive outpatient program for alcohol dependence, and complete a psychiatric assessment.

{¶ 11} Hurley, however, failed to comply with these treatment recommendations. Instead, about two months after his OLAP evaluation, he underwent a second alcohol assessment at the Cleveland VA Medical Center. He testified that VA medical professionals told him that he was not alcohol dependent and that he

did not need to follow OLAP's recommended treatment. Accordingly, he testified that he canceled the OLAP contract. The panel members asked Hurley to submit documentation showing that he had canceled the contract. He agreed to submit the evidence within a week of the hearing but then failed to do so. The board ultimately placed little value on the VA assessment because it was based on a questionnaire filled out by Hurley, with no apparent follow-up by a medical professional to verify the accuracy of his answers.

{¶ 12} Whether alcohol dependence contributed to the underlying misconduct here is a question for qualified health professionals. However, Hurley's varied statements about his alcohol use, his failure to comply with his OLAP contract, and his failure to substantiate his cancellation of that contract are also aggravating factors in this case.

### Applicable precedent

{¶ 13} To support its recommended sanction, the board first cites *Disciplinary Counsel v. Whitfield*, 132 Ohio St.3d 284, 2012-Ohio-2708, 971 N.E.2d 915, in which we suspended an attorney for two years based on (1) the attorney's fourth-degree-felony conviction for aggravated assault and (2) the fact that he signed several court documents relating to a Kentucky case, even though he was not licensed in that state. We found several mitigating factors, including that the attorney did not act with a dishonest or selfish motive and that he fully complied with his two-year OLAP contract. *Id.* at ¶ 9–10. Only one aggravating factor was present: the attorney's assault resulted in physical harm to the victim. *Id.* at ¶ 11. Based on these facts, we credited Whitfield for the time he had served under his interim felony suspension but required that he extend his OLAP contract for two years. *Id.* at ¶ 14.

{¶ 14} The board recognized that Hurley's felonies did not result in physical injuries but that his actions nonetheless caused significant harm. Hurley used his position as an assistant prosecutor to illegally access a secure criminal-justice database for purely personal and selfish reasons. This behavior works to undermine public trust in the legal system and in public employees in general. *See Disciplinary Counsel v. Engel*, 132 Ohio St.3d 105, 2012-Ohio-2168, 969 N.E.2d 1178, ¶ 13 (finding that a public-sector attorney's distribution of confidential information about pending law-enforcement and ethics investigations to those who were not authorized to receive such information worked to undermine public trust in the legal system and in state government as a whole).

{¶ 15} We agree with the board that the sanction imposed in *Whitfield* is instructive. However, more aggravating factors are present here, including that Hurley acted with a dishonest motive and he failed to comply with—or show cancellation of—his OLAP contract. In addition, at the hearing, he was unable to recall basic facts regarding the conduct that led to one of his convictions. Thus,

we accept the board's recommendations that Hurley should serve a two-year suspension, his reinstatement should be conditioned on another OLAP evaluation, and upon reinstatement he should serve a two-year period of monitored probation. But we decline to grant him credit for the time served under his interim felony suspension.

## Conclusion

{¶ 16} For the reasons explained above, Rosel Charles Hurley III is hereby suspended from the practice of law in Ohio for two years, with no credit for time served under his interim felony suspension. Hurley's reinstatement shall be subject to the following conditions: (1) he must be evaluated by OLAP for any potential mental-health or substance-abuse problems and be compliant with all conditions, restrictions, and terms imposed by OLAP pursuant to that evaluation and (2) he shall complete sufficient hours of continuing legal education and any other conditions necessary for him to be in compliance with the requirements of the Office of Attorney Services. Upon reinstatement, he must serve a two-year period of probation pursuant to Gov.Bar R. V(21) to monitor his continued compliance with OLAP's requirements. Costs are taxed to Hurley.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, and FRENCH, JJ., concur.

PFEIFER, LANZINGER, and O'NEILL, JJ., dissent and would grant credit for time served.

---

McCarthy, Lebit, Crystal & Liffman Co., L.P.A., Anne W. Keller, and Kristina W. Supler; and K. Ann Zimmerman, Bar Counsel, and Heather M. Zirke, Assistant Bar Counsel, for relator.

Rosel Charles Hurley III, pro se.