Per Curiam.
*261 *536 {¶ 1} Respondent, Rosel Charles Hurley III, of Cleveland, Ohio, Attorney Registration No. 0083288, was admitted to the practice of law in Ohio in 2008.
*537 {¶ 2} In March 2013, we suspended his license on an interim basis after receiving notice that he had been convicted of multiple felonies for improperly using the Ohio Law Enforcement Gateway while employed by the Cuyahoga County prosecutor's office. In re Hurley , 134 Ohio St.3d 1491, 2013-Ohio-924, 984 N.E.2d 33. In November 2013, we suspended him for failing to register as an attorney for the 2013-2015 biennium. In re Attorney Registration Suspension of Hurley , 136 Ohio St.3d 1544, 2013-Ohio-4827, 996 N.E.2d 973. And in April 2015, we suspended him for two years for the conduct underlying his felony convictions and two unrelated misdemeanor convictions. Cleveland Metro. Bar Assn. v. Hurley , 143 Ohio St.3d 69, 2015-Ohio-1568, 34 N.E.3d 116. His attorney-registration and 2015 suspensions remain in effect.
{¶ 3} In January 2017, relator, Cleveland Metropolitan Bar Association, charged him with holding himself out as an attorney during his suspension and engaging in other dishonest conduct. Although Hurley admitted that many of the facts stated in the complaint were accurate, he denied that he violated any professional-conduct rules. After a panel of the Board of Professional Conduct held a hearing, the board found that he had engaged in the charged misconduct and recommended that we permanently disbar him. Hurley objects to both the board's findings of misconduct and the recommended sanction.
{¶ 4} We agree with the board that Hurley committed the violations alleged in the complaint. However, based upon our review of the record, we sustain in part Hurley's objections and conclude that an indefinite suspension is the appropriate sanction in this case with added conditions for reinstatement.
Misconduct
{¶ 5} According to Hurley, he was unable to obtain full-time employment after he was suspended, and he believed that employers were discriminating against him based on his race and prior felony convictions. As a result of this perceived injustice, he sent "demand letters" in response to at least 20 Internet job postings that included language disqualifying applicants who had criminal backgrounds. The letters warned employers that their "blanket exclusion of job applicants with felony convictions" violated federal law and "resulted in Disparate Impact to African Americans." With each letter, Hurley included a proposed settlement agreement, in which the employer would agree to pay $500 to avoid the filing of a complaint with the Equal Employment Opportunity Commission ("EEOC").
{¶ 6} Hurley's letters included the identifier "Arnuma Law LPA" or "Arnuma Law LLC" in large, bold print at the top of the first page. Arnuma Law, L.P.A., was the name of Hurley's former law firm. In addition, the letters made numerous references to a "client." Specifically, they stated:
*538 The blanket exclusion of prospective job applicants with felony convictions have had [a] disastrous effect on individuals such as our client, people who want to work, earn and be productive citizens in society. Our client is more concerned about changing this behavior rather than receiving some large monetary settlement * * *, thus, against our advice, he would like to settle this matter for a promise that *262 you will change your employment practices in regards to prospective employees who have felony convictions and for a nominal amount of $500.00 (five hundred dollars), check or money order written in the name of Arnuma Law LPA, sent to the office address of 12800 Shaker Boulevard, STE 230, Cleveland, OH 44120. * * *
* * * Our Client will pursue the filing of an official EEOC Complaint if settlement is not reached within 30 days * * *.
Underneath the line for his signature, Hurley had typed "Mr. Rosel C. Hurley, J.D., Esquire." He later admitted that he had no "client" but was acting solely on his own behalf.
{¶ 7} At Hurley's disciplinary hearing, relator offered two witnesses who testified that they had received the demand letter. First, John Balloun, the president of a small business in Georgia, testified that he received the letter in response to an online job posting for a field-service technician. Believing that Hurley was authorized to practice law, Balloun became concerned that the language in his company's job posting may be illegal. To avoid the expenses of consulting with an attorney and potential litigation, Balloun signed the proposed settlement agreement and issued a $500 check to Arnuma Law. According to Balloun, Hurley never told him that he was suspended from the practice of law in Ohio. Hurley later testified that Balloun was the only person who executed the settlement agreement and paid the requested $500.
{¶ 8} Relator's second witness was James Roland, the operations manager for a small business in Colorado. Roland testified that he received the demand letter in response to an online job posting for a process server. Roland reacted to the letter by removing the job posting and considered paying the settlement offer. But after talking to a lawyer, Roland reposted the position. Hurley resubmitted the demand letter, and at that point, Roland researched Hurley's Ohio attorney-registration status and discovered that he was suspended.
{¶ 9} Based on the hearing evidence, the board concluded that Hurley had misrepresented his status as an Ohio lawyer in an attempt to mislead and intimidate small businesses into paying him money. Consequently, the board found that by sending the demand letters while under suspension, using the name of his former law firm and including "Esquire" after his own name, and omitting from the letters that he was suspended and representing only himself, he violated *539 Prof.Cond.R. 5.5(a) (prohibiting a lawyer from practicing law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction), 5.5(b)(2) (prohibiting a lawyer who is not admitted to practice in this jurisdiction from holding out to the public or otherwise representing that the lawyer is admitted to practice), 7.1 (prohibiting a lawyer from making or using a false, misleading, or nonverifiable communication about the lawyer or the lawyer's services), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
Hurley's objections
{¶ 10} Throughout these proceedings and in his written objections, Hurley has maintained that because he did not actually represent any clients at the time he sent the demand letters, he did not violate his suspension orders. The unauthorized practice of law, however, includes not only the rendering of legal services for another by any person not authorized to practice in Ohio but also the holding out to *263 the public or otherwise representing oneself as authorized to practice in Ohio by a person not authorized to do so. Disciplinary Counsel v. Harris , 137 Ohio St. 1, 2013-Ohio-4026, 996 N.E.2d 921, ¶ 18; Gov.Bar R. VII(2)(A)(4). Thus, the fact that Hurley did not actually represent any clients does not mean that he did not engage in the unauthorized practice of law.
{¶ 11} Hurley also relies on Sperry v. Florida ex rel. Florida Bar , 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), in which the United States Supreme Court held that Florida could not enjoin a nonlawyer registered to practice before the United States Patent Office from preparing patent applications in that state-activity that would otherwise constitute the practice of law in Florida-because federal law expressly authorized nonlawyer practice of that type before the patent office. Id. at 385, 404, 83 S.Ct. 1322. Hurley appears to be arguing by analogy that we cannot punish his conduct, because he was authorized by federal law to engage in activity before the EEOC. To support that claim, he submitted a copy of a screenshot from an EEOC webpage indicating that anyone may file a charge of discrimination with the agency on behalf of another person.
{¶ 12} Hurley, however, did not file a discrimination charge with the EEOC. Rather, he attempted to privately settle a potential discrimination claim on behalf of a nonexistent client. Hurley has failed to identify any federal statute or regulation expressly authorizing such activity by nonlawyers or suspended lawyers. Therefore, Sperry does not absolve or otherwise protect Hurley against the board's findings of misconduct in this case.
{¶ 13} Finally, at oral argument, Hurley set forth additional reasons to reject the board's misconduct findings, including that relator had belatedly disclosed its witnesses prior to the disciplinary hearing and failed to sufficiently prove certain counts of its complaint. Because Hurley did not raise these arguments in his *540 written objections, they are not properly before the court. Disciplinary Counsel v. Goldblatt , 118 Ohio St.3d 310, 2008-Ohio-2458, 888 N.E.2d 1091, ¶ 5.
{¶ 14} We therefore overrule Hurley's objections and agree with the board that he violated Prof.Cond.R. 5.5(a), 5.5(b)(2), 7.1, and 8.4(c).
Sanction
{¶ 15} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.
Aggravating and mitigating factors
{¶ 16} As aggravating factors, the board found that Hurley has a prior disciplinary record, had a dishonest motive, engaged in a pattern of misconduct, committed multiple offenses, refused to acknowledge the wrongful nature of his conduct, and caused harm to the victims of his misconduct. See Gov.Bar R. V(13)(B)(1) through (4), (7), and (8). The board did not find any mitigating factors.
{¶ 17} Even though the board did not find any mitigating factors, we may take into account "all relevant factors" in determining what sanction to impose. Gov.Bar R. V(13)(A) ; see Disciplinary Counsel v. Smith , 124 Ohio St.3d 49, 2009-Ohio-5960, 918 N.E.2d 992, ¶ 25, citing Cincinnati Bar Assn. v. Mullaney , 119 Ohio St.3d 412, 2008-Ohio-4541, 894 N.E.2d 1210, ¶ 40.
*264 {¶ 18} Hurley objects to the board's refusal to acknowledge any mitigating evidence. Significantly, he claims that he fully cooperated in the disciplinary process by responding to relator's inquiries and making himself available for meetings and a deposition. In response, relator acknowledges that Hurley cooperated in the process but argues against giving him mitigating credit because he refused to disclose or admit that his demand letters were misleading. Gov.Bar R. V(13)(C)(4) provides that attorneys may be given mitigating credit for "[f]ull and free disclosure to the Board or cooperative attitude toward proceedings." (Emphasis added.) Under the rule, cooperating in the disciplinary process is distinct from disclosing or acknowledging the wrongfulness of one's misconduct. Because there is no dispute that Hurley fully participated in the process, he should be given some mitigating credit for his cooperative attitude.
{¶ 19} Hurley next points to the fact that he refunded $500 to Balloun. Gov.Bar R. V(13)(C)(3) provides that an attorney's "timely, good faith effort to make restitution or to rectify consequences of misconduct" may be considered in favor of a less severe sanction. Relator acknowledges that Hurley made restitution to Balloun but argues that it was not "timely," because he issued the refund check *541 over a year after accepting the money and only after relator had filed its disciplinary complaint. Certainly, Hurley could have returned the money in a timelier manner. Nonetheless, he refunded the money more than a month before his disciplinary hearing. We therefore find that he is entitled to at least some mitigating credit for making restitution or attempting to rectify the consequences of his misconduct. See Erie-Huron Counties Joint Certified Grievance Commt. v. Derby , 131 Ohio St.3d 144, 2012-Ohio-78, 961 N.E.2d 1124, ¶ 10 (acknowledging that an attorney's refunding most of his clients' money by the date of his disciplinary hearing qualified as a mitigating factor).
{¶ 20} Finally, Hurley asserts that he recently entered into a contract with the Ohio Lawyers Assistance Program ("OLAP") to address a mental disorder and is undergoing treatment. After Hurley's disciplinary hearing, the panel issued an order stating that Hurley was to provide "proof of any reinstatement of his OLAP contract or reengagement with OLAP since April 2017." The record reflects that Hurley then filed a four-year contract with OLAP signed by Hurley on May 5, 2017, which was designed in part to facilitate his compliance with one of the conditions for reinstatement imposed regarding the suspension we ordered in April 2015. See 143 Ohio St.3d 69, 2015-Ohio-1568, 34 N.E.3d 116, at ¶ 16.
{¶ 21} Although Hurley's OLAP contract alone is insufficient to prove that his disorder qualifies as a mitigating factor under Gov.Bar R. V(13)(C)(7), we accord some mitigating effect to the fact that he entered into the contract to address his diagnosed mental disorder. See Disciplinary Counsel v. Anthony , 138 Ohio St.3d 129, 2013-Ohio-5502, 4 N.E.3d 1006, ¶ 13 (according some mitigating weight to an attorney's diagnosed gambling disorder, his OLAP contract, and his commencement of treatment, although the disorder did not otherwise qualify as a specific mitigating factor under the board's regulations).
{¶ 22} Accordingly, we sustain Hurley's objections to the board's finding that no mitigating factors are present in this case.
Applicable precedent
{¶ 23} To support its recommended sanction, the board cited *265 Cleveland Metro. Bar Assn. v. Pryatel , 145 Ohio St.3d 398, 2016-Ohio-865, 49 N.E.3d 1286, in which we disbarred an attorney after he appeared on behalf of a client in three court proceedings a few months after we had suspended him. In that case, we reaffirmed that " 'disbarment is the presumptive sanction for an attorney who continues to practice law while under suspension,' " and due to the lack of mitigating factors, we had no reason to depart from the presumptive sanction. Id. at ¶ 21, quoting Cleveland Metro. Bar Assn. v. Brown , 143 Ohio St.3d 333, 2015-Ohio-2344, 37 N.E.3d 1199, ¶ 15. More recently, we noted that "we have customarily imposed that [presumptive] sanction on attorneys who violated our suspension *542 orders on multiple occasions and then failed to cooperate in the ensuing disciplinary investigation." Disciplinary Counsel v. Hoskins , 150 Ohio St.3d 41, 2017-Ohio-2924, 78 N.E.3d 845, ¶ 27.
{¶ 24} Unlike the attorney in Pryatel , Hurley has set forth sufficient mitigating evidence to warrant a lesser sanction than disbarment. Hurley cooperated in the disciplinary process, made restitution, and is taking measures with OLAP to address his diagnosed mental disorder. Under these circumstances, an indefinite suspension serves to protect the public while also leaving open the possibility that with treatment, Hurley might one day be able to return to the competent, ethical, and professional practice of law. See Disciplinary Counsel v. Mitchell , 124 Ohio St.3d 266, 2010-Ohio-135, 921 N.E.2d 634 (indefinitely suspending an attorney who, while under suspension, held himself out as authorized to practice and engaged in other dishonest conduct; mitigating factors included that he cooperated with the disciplinary process by appearing for a deposition and admitted his misconduct).
{¶ 25} The imposition of an indefinite suspension is appropriate because it protects the public by ensuring that Hurley cannot return to the practice of law without petitioning for reinstatement pursuant to Gov.Bar R. V(25)(A). Before Hurley can be reinstated, he must demonstrate that he has met the conditions set forth in this opinion. Gov.Bar R. V(25)(D)(1). In addition, Hurley must establish by "clear and convincing evidence" that he is "now a proper person to be readmitted to the practice of law in Ohio," Gov.Bar R. V(25)(D)(1)(f).
Conclusion
{¶ 26} For the reasons explained above, Rosel Charles Hurley III is hereby indefinitely suspended from the practice of law in Ohio. Furthermore, in addition to the requirements set forth in Gov.Bar R. V(25)(D)(1), the following conditions for reinstatement shall apply: Hurley shall (1) submit to a mental-health evaluation conducted by OLAP and obtain a report stating that he is able to return to the competent, ethical, and professional practice of law, (2) maintain and comply with the terms of the OLAP contract that he signed on May 5, 2017, or if that contract lapses for any reason, enter into and comply with the requirements of a new OLAP contract, the duration and terms to be determined by OLAP, and (3) comply with all recommendations of OLAP and his treating professionals. Costs are taxed to Hurley.
Judgment accordingly.
Kennedy, French, O'Neill, Fischer, and DeWine, JJ., concur.
O'Connor, C.J., dissents, with an opinion joined by O'Donnell, J.
O'Connor, C.J., dissenting.
*543 {¶ 27} I dissent. For the reasons stated in the Board of Professional Conduct's final report, I would accept the board's recommendation that respondent, Rosel *266 Charles Hurley III, be permanently disbarred from the practice of law.
O'Donnell, J., concurs in the foregoing opinion.